Michelle OLIVER et al., Plaintiffs,

v.

KALAMAZOO BOARD OF EDUCATION et al., Defendants.

No. K88–71 C.A.

United States District Court,
W. D. Michigan, S. D.

April 8, 1981.

Thomas I. Atkins, New York City, Duane Elston, Detroit, Mich., for plaintiffs.

Ford, Kriekard, Staton, Allen & Decker, Kalamazoo, Mich., for Kalamazoo Bd. of Ed.; Arthur Staton, Jr., Kalamazoo, Mich., of counsel.

Richard P. Gartner, Asst. Atty. Gen., Lansing, Mich., for State defendants.

Thomas A. Baird, Lansing, Mich., for KEA and MEA.

## OPINION

NOEL P. FOX, Senior District Judge.

The Kalamazoo Board of Education (KBE) has moved this court, within the scope of the above-captioned school desegregation case, to enjoin certain grievances filed by the Kalamazoo Education Association (KEA) and some of its members and a petition filed with the State Tenure Commission. These complaints arise out of the events of late summer and early fall of 1980 when, it is alleged, a number of teachers were laid off, called back as substitutes, bumped out of their positions by administrators, improperly transferred and otherwise treated contrary to their contractual rights. Basically, it is the position of the KBE that any relief in the grievants' and petitioners' favor from the respective decision-makers would necessarily conflict with this court's layoff and recall opinion dated September 30, 1980. This opinion will discuss this court's jurisdiction and injunctive power to consider the KBE's motion and, subsequently, the merits of the motion.

The early history of this school desegregation case is fully reported in the opinions of this court granting preliminary and permanent injunctive relief to the plaintiffs.

This court's more recent opinion referred to above describes the factual situation that gave rise to the present motion. Further discussion of the specific facts will be included in the portion of this opinion setting forth the ruling of the court.

## I. JURISDICTION.

As has occurred in many of the motions considered by this court in the exercise of its continuing jurisdiction over desegregation in the Kalamazoo schools, the jurisdiction of the federal court to consider this motion has been challenged. This court holds that it is clear, however, that it does have the proper authority to consider issues affecting the racial composition of the school teaching staff. This issue was dealt with at length in the September 30, 1980 opinion and the court sees no need to restate its position other than to incorporate by reference that portion of the earlier opinion designated III, A and to state that the matter presently before the court is an outgrowth of the same controversy that resulted in the layoff and recall opinion of September 30.

In addition, the KBE alleges that a failure to grant them relief will result in the contravention of the court's layoff and recall opinion. Regardless of the ultimate decision on the merits of this allegation, the jurisdiction of this court cannot be denied when its own judgments are threatened. It is not the intent of the court to involve itself in the contractual disagreements of the KBE and the KEA and its members unless and to the extent that such matters affect the constitutional rights of the original plaintiffs in this action and the court's desegregation efforts.

This court's jurisdiction to consider this matter is not foreclosed by the appeals taken from its layoff and recall opinion to the Sixth Circuit Court of Appeals. Though this decision is related to that opinion and the general rule is that an appeal to the Court of Appeals deprives a district court of jurisdiction as to any matters involved in the appeal, see, e. g., *Jago v.*

*United States District Court*, 570 F.2d 618, 622 (6th Cir. 1978); *Hogg v. United States*, 411 F.2d 578 (6th Cir. 1969); *Keohane v. Swarco, Inc.*, 320 F.2d 429, 432 (6th Cir. 1963); 9 Moore, *Federal Practice*, ¶ 203.11, an exception has been recognized that permits a district court to enter orders on issues that are presently before the court of appeals in order to preserve the status quo or to enforce a previous order. *Hoffman v. Beer Drivers and Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976). This exception is especially applicable in school desegregation cases where the court is involved in continuing supervision of the board's elimination of discrimination and segregation. *United States v. Board of School Commissioners*, 503 F.2d 68, 81–82 (7th Cir. 1974). In the present case, the status quo, as ordered by the court on September 30, 1980 and subsequently implemented by the school board, is allegedly being threatened by the actions of the KEA. Therefore, it is necessary for the court to evaluate the contractual and state law procedures and to be assured that its previous order will continue to be enforced, pending the outcome of the appeals process.

In deciding whether this court may properly exercise its continuing jurisdiction, the recent *Oliver v. Kalamazoo Board of Education* decisions of the United States Court of Appeals for the Sixth Circuit must be considered. 640 F.2d 782 (6 Cir. 1980); 640 F.2d 823 (6 Cir. 1980). Though the Court vacated and remanded this court's order implementing the recommendations of the Green-Cohen Report and directing the State Board of Education to take over funding of the Emergency School Aid Act program previously funded by the federal government and though Judge Weick would order this court to dismiss the case completely (separate opinion, concurring in part and dissenting in part), it is clear that the Court of Appeals left intact this court's ruling on the threshold question of jurisdiction over desegregation efforts in the Kalamazoo schools. The Court of Appeals based its ruling on what was perceived to be a failure of plaintiffs to meet the necessary burden of proof but did not challenge the district

court's right to consider the matters presented to it. In fact, the Court of Appeals affirmed the order requiring the State Board of Education to pay the salaries of the experts' staff.

## II. THE COURT'S INJUNCTIVE POWER.

■ Both the KBE and the KEA have discussed in their post-hearing briefs the scope of the court's power to enjoin the internal grievance proceedings and the petition filed with the State Tenure Commission, referring particularly to the Anti-Injunction Act, 28 U.S.C. § 2283, which allows a federal court to enjoin proceedings in a state court only under certain limited circumstances. However, it would be a mistake to treat these two proceedings in the same manner. As to the internal grievances, the KEA has raised no precedent that would lead to a conclusion that these proceedings, possibly concluding in binding arbitration, should be considered "proceedings in a State court" for purposes of the Anti-Injunction Act. The court rejects any such attempted characterization and holds that it is limited only by the traditional principles of granting equitable relief. As to the Tenure Commission proceedings, however, the same policies of federalism and deferral to state tribunals are involved in a request to stay a state administrative hearing. *Geiger v. Jenkins*, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), *aff'g mem.*, 316 F.Supp. 370 (N.D.Ga.1970); *McCune v. Frank*, 521 F.2d 1152, 1158 (2nd Cir. 1975).

■ Nevertheless, this case is clearly one where the exceptions of section 2283 are applicable. This court's concern that its long efforts to speed the desegregation of the Kalamazoo Public Schools, particularly its order regarding teacher recall and hiring, not be diluted by state and internal proceedings cannot be emphasized enough. The second and third exceptions to section 2283, allowing federal courts injunctive relief against state court proceedings when "necessary in aid of its jurisdiction [and] to protect or effectuate its judgments," both are applicable in this type of situation.

Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). The work of Wright and Miller, *Federal Practice and Procedure*, § 4225, recognizes school desegregation as an example of a situation where the first of these two exceptions is particularly applicable. Specifically, as is the case in *Oliver*, when a federal court is involved in desegregating a school district, it must be permitted to prevent a state tribunal from interfering with its continuing jurisdiction by making contrary rulings. Thus, injunctive relief against a state court is permitted in aid of the district court's jurisdiction. *Swann v. Charlotte-Mecklenburg Board of Education*, 501 F.2d 383, 384 (4th Cir. 1974). In *Swann*, the appellate court upheld the injunction because allowing the state court proceeding to continue could affect the school board's efforts to comply with the previous federal court ruling. This is the same situation that is feared in the present case.

The third exception to section 2283, protecting or effectuating a federal court's judgments, is basically aimed at preventing relitigation of issues decided by the federal court. This is precisely what is being alleged by the KBE. It is clear, at least as to the order of recall and certain other matters, that there are issues raised in the proceedings sought to be enjoined that have been litigated or could have been litigated by these parties at an earlier time before the federal court. Thus, to that extent, the court is also entitled to issue injunctive relief.

However, though a court may have the power to enjoin certain activities by meeting the requirements of section 2283, the traditional principles of equity, requiring a showing of irreparable injury and absence of an adequate remedy at law, are not eliminated. *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). The moving party in this motion, the KBE, recognizes that it is still necessary for them to meet equitable principles. KBE's post-hearing brief, p. 19, citing *Lamb Enterprises, Inc. v. Kiroff*, 549 F.2d 1052 (6th Cir. 1977). The KEA asserts that these requirements are not present. However, such requirements must be put in the context of the school desegregation case within which this motion was filed and the court's primary concern for the advancement of the desegregation efforts and the protection of the constitutional rights of the children attending the Kalamazoo Public Schools. Initially, it should be pointed out that school desegregation cases are, by their nature, equitable actions. Considering the question of adequate remedy at law, a certain sum of money cannot compensate for the loss experienced by children attending school in a segregated environment. Likewise, the scars and loss in such a situation are immediate and irreparable. Thus, since this court has tailored the relief granted in this opinion to see that the conflicts over contractual and state law between the KBE and the KEA do not bring on such injury through interference with this court's desegregation efforts, it is clear that the equitable principles have been satisfied.

## III. THE COURT'S RULING.

The court has been presented with several alternatives in dealing with this motion. On the one hand, all grievances against the KBE arising out of the activities of last fall could be enjoined, thus preventing the KEA and its members from raising their claims in any forum. At the other extreme, this court could deny all injunctive relief and allow the complaints to proceed without specific or additional guidance. An alternative to this would be for this court to be the factfinder in these complaints. However, in light of the protective relief ultimately granted and the overloaded docket of the federal court, this alternative is neither necessary nor attrac-

tive. Another middle position would be to allow the complaints to be processed in their proper forums but with the adjudicator limited and guided by the opinion of this court. This court is concerned with doing justice and equity for all parties involved in this protracted litigation. Thus, the complete relief sought by the KBE cannot be granted. A blanket injunction prohibiting the prosecution of any of the grievances filed strikes too broadly against the contractual and state law rights of the teachers. To foreclose all forums on the basis of potential conflicts violates the teachers' rights to due process of law. However, it is clear that both a collective bargaining agreement and state law must fall if their implementation results in the contravention of the U.S. Constitution Article VI, ¶ 2, by preventing the KBE from carrying out its constitutional duties. With these general guidelines in mind, it is the decision of the court, as discussed in detail below, to enjoin certain grievances that clearly conflict with this court's desegregation efforts, to allow the majority of the other complaints to proceed in their proper forum with any potential relief limited by the spirit, as well as the letter, of the court's previous opinions and to order certain other requirements to guarantee that this occurs, and to retain jurisdiction to review, on motion of one of the parties, any relief that is truly thought to conflict with this court's orders.

The four major areas of conflict contained in the grievances and the petition are the necessity of the layoffs, the incursion of the administrators into the teaching ranks, the failure to use bargaining unit members at full wages to fill vacancies, and the method of transferring staff from the facilities closed pursuant to the school reorganization plan.

■ The first general area, the financial necessity for layoffs, was considered by this court in deciding the proper order for recall. The number of teachers laid off convinced this court of the need to circumvent the contract provision on recall and the number recalled was used in evaluating the effect of the court's opinion. It was part of the

holding of this court that the layoffs were believed to be necessary at the time that they were ordered by the court, even after other adjustments were made in the school budget. Both parties to this motion agree that this was considered and accepted by the court. The court is satisfied that there was nothing improper in this decision by the board and orders that this should not be considered in the prosecution of the grievances and the petition. The KEA's references to changed circumstances following the board's layoff orders can only refer to the same events that led the KBE to seek recall of a certain number of teachers. This was not information available to the KBE at the time of its original layoff decision, and, thus, does not compel the circumvention of collateral estoppel on that issue.

■ The KEA has also grieved the bumping of teachers out of their positions by administrators. It is the KBE's position that if the KEA prevails, these administrators will be removed and replaced by teachers on layoff, possibly resulting in a violation of the court's order that 20% black teachers be recalled. The issue raised by these grievances is the tenured status of administrators and the date from which seniority is determined. These are matters of state contract and tenure law. If the administrators are found to be "tenured teachers" within the meaning of the state tenure law, as the KBE contends, these individuals would take their places on the teacher tenure list, as determined by the Tenure Commission, with all the black administrator/tenured teachers being automatically retained as provided in the layoff opinion. The Tenure Commission, if requested, could also decide whether individual non-black administrator/tenured teachers have sufficient seniority to be retained over other non-black tenured teachers who were members of the bargaining unit.

If, on the other hand, KEA prevails and the administrators are found not to be "tenured teachers," all those newly-vacated positions would be filled according to the recall plan of this court. The fact that there are blacks in this group who would be re-

moved is not determinative. First of all, the court's order was not concerned with the precise numbers of minority staff recalled in granting the layoff relief but intended to create a plan whereby the current situation, as well as future questions of layoff, recall and hiring could be handled effectively and without constitutional violation. Secondly, the positions potentially vacated by the administrators must be filled according to the 4:1 ratio, either through recall or new hirings. It is instructive to note this court's disposition of the KBE's motion to enjoin the state court challenge of the administrators and their union to their "demotion" into the teaching ranks. That case, which also might have collateral impact on the statistics involved in the recall opinion, was allowed to proceed. (October 14, 1980.) Any relief in that case also must conform to the September 30th opinion, but it was left to the state court to decide the state and contract law issues. Incidentally, if the administrators would prevail in that state case, the vacancies created by their restoration to administrative status would be filled in the 4:1 ratio.

The third area of conflict involves the KBE's use of substitute teachers, several of whom were laid-off staff members, to fill the teaching vacancies prior to this court's ruling on the proper order of recall. It is the KEA's position that these permanent positions were, in some instances, improperly filled by individuals who were not members of the bargaining unit or by probationary teachers rather than offered to tenured teachers, that these teachers should have been paid at their normal salary rather than at the lower substitute teacher rate, that the contract and the state tenure law had not been circumvented by the court at that time and Article XXII, section E should have been followed, and that the union suffered a loss of dues because of this action. Basically, the KEA believes that the KBE should not be allowed to use the situation present in September 1980 to avoid paying full salary and benefits for those bargaining unit members who were or should have been filling permanent, fully-budgeted positions.

The KBE contends that its actions were directly related to its prospective compliance with the court's order. The board claims that, if the vacancies were filled by tenured teachers, state law required that contracts for the entire year be issued. It was allegedly the KBE's fear that, to the extent the recall order differed from the contracts it so issued, it would be burdened with either employing too many teachers and going over budget, laying off some of the teachers and breaching their contracts, or not complying with the court's order and risking contempt.

However, this fear turns on the interpretation of the requirements of state contract and tenure law. If the state law would require the board to issue one-year contracts to those tenured teachers paid their full wage for substituting pending the court's decision, it truly would frustrate and complicate the task of the district court in its desegregation efforts. If, on the other hand, there is no such mandatory contract, the KBE should not be permitted, on the basis of a future court order, to withhold teachers' salaries and benefits that were budgeted for and fairly earned or should have been earned by regular teachers. Thus, this issue turns on the mandates of the collective bargaining agreement and state law and should be decided in the proper forums for those issues. The KBE's position also ignores the claims of several laid-off black tenured teachers who would have been recalled under any parties' theory of the case. Yet, in the month of September, they either substituted at substandard wages or were not recalled at all prior to the court's order of September 30. Clearly their claims do not challenge the desegregation work of the court and could in no way conflict with the court's order.

To the extent that such grievances call for the *present* reinstatement of teachers that the KEA asserts were entitled to substitute at full salary and for an award of back pay to them, it does conflict with the ultimate decision of the court. Thus, the resolution of these grievances is to be limit-

ed to the time from the beginning of school to the implementation of the lay-off opinion.

■ The final area of conflict to be discussed in this opinion is the KEA's claim that the KBE violated an agreement concerning the reassignment of teachers employed at schools closed under the recent school reorganization. The agreement provided for reassignment on the basis of seniority and certification, with each displaced teacher listing first, second and third choices for placement. The KBE's position is that this grievance is part of a continuing disagreement between the Board and the Union over "certification" and "qualification." This court is not convinced, however, by the KBE's assertion that this was an issue that should have been raised by the KEA at earlier hearings in this case. This is a matter of contractual interpretation and state tenure law and is only tangentially related to the desegregation issues. The KBE again misconstrues the court's intentions when it notes that this issue impacts on the precise make-up of the original lay-off list. As stated earlier, it was not the precise number or identity of the laid off teachers that the court was addressing but the broader purpose of formulating a plan that would provide a sufficient number of black teacher-role models and provide some upward thrust towards the Board's own minority staff goal while guaranteeing competent instruction and not unduly infringing on white teachers' expectations.

The KBE also points to the danger of maldistribution of black teachers within the system if the agreement is followed. While this, indeed, is a legitimate concern of this court, the mere claim of such a conflict will not result in the foreclosure of such grievances. The court is skeptical that, with three preference choices by each reassigned teacher and a proper resolution of the certification/qualification issue, the Board would be unable to avoid such a maldistribution. As further protection of the desegregation efforts, the KEA noted in its closing argument on this motion that it was its position that racial identification of any

building was to be avoided. Furthermore, all must recognize that precedent is still superior to preference. This agreement cannot be allowed to result in the racial identification of a building; however, with such limitations on the actions of the KBE, these grievances should be allowed to proceed.

In summary, it is the court's opinion that many of the grievances can go forward without threatening the spirit or the letter of the desegregation efforts of this court if the limitations discussed above are followed. All parties to this action are aware of the high regard in which the constitutional rights of equality under the law are held by this court. This court believes that the parties will be able to proceed on these claims accordingly.

The court, however, is not blind to the fears of the KBE in defending against these actions. It is also in the best interests of the students of the Kalamazoo School District to have these disputes resolved as quickly and inexpensively as possible. Therefore, it is the opinion of this court that several procedural safeguards should be utilized in the grievance and tenure petition proceedings. Since many of the grievances involve the same legal questions, this court accepts the KEA's offer to consolidate the individual and group grievances raising the issues discussed above into a single proceeding and orders the KBE to set up the necessary administrative hearings as soon as possible. To the extent that this grievance action may progress to the point of binding arbitration under the contract, it is the order of this court that the parties are to agree to an attorney-arbitrator. The added expertise of such a person will facilitate careful and proper integration of this court's opinions into the grievance proceedings. As for the Tenure Commission, this court simply would call to their attention the constitutional standards that are involved in this case and remind the Commission that they are bound by them under the Supremacy Clause.

Finally, as stated earlier in this opinion, this court retains an interest in and jurisdic-

tion over the desegregation of the Kalamazoo schools. It, therefore, reserves the right to entertain good faith motions that challenge any relief granted in the forums discussed in the opinion as violating the U.S. Constitution as applied by the court in this action.