536 F.2d 1268
 92 L.R.R.M. (BNA) 3302, 79 Lab.Cas. P 11,489
 Roy O. HOFFMAN, Regional Director of Region 20 of the
National Labor Relations Board, for and on Behalf
of the NATIONAL LABOR RELATIONS BOARD,
Petitioner-Appellee,
v.
BEER DRIVERS & SALESMEN'S LOCAL UNION NO. 888, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
AND HELPERS OF AMERICA, and Alameda
Central Labor Council,
Respondents-Appellants.
Roy O. HOFFMAN, Regional Director of Region 20 of the
National Labor Relations Board, for and on Behalf
of the NATIONAL LABOR RELATIONS BOARD,
Petitioner-Appellee,
v.
BEER DRIVERS & SALESMEN'S LOCAL UNION NO. 888, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
AND HELPERS OF AMERICA,
Respondent-Appellant.[1]
 Nos. 74-1449 to 74-1452, 74-2124 and 74-2976.
 United States Court of Appeals,
Ninth Circuit.
 June 3, 1976.
 
 1
 David Rosenfeld, (argued), of Levy, VanBourg, & Hackler, San Francisco, Cal., for respondents-appellants.
 
 
 2
 Joseph E. Mayer, Atty. (argued), N.L.R.B., Washington, D.C., for petitioner-appellee.
 
 OPINION
 
 3
 Before KOELSCH and HUFSTEDLER, Circuit Judges, and SMITH,* District Judge.
 
 RUSSELL E. SMITH, District Judge:
 
 4
 These consolidated appeals all arise out of proceedings in which the National Labor Relations Board sought, under the authority of 29 U.S.C. § 160(l ), to prevent the appellant labor organizations from engaging in secondary boycotts in violation of Section 8(b)(4)(B) of the Act (29 U.S.C. § 158). The disputes arose out of attempts by the appellants, some of whom had primary labor disputes with beer distributors handling beer in Northern California, to keep the beer handled by those distributors off the market.
 
 
 5
 We here consider appeals from the orders of November 6, 1973, December 4, 1973, March 26, 1974, and June 28, 1974. All of these orders are in some measure dependent upon the order of September 26, 1973, from which no appeal was taken.
 
 THE ORDER OF SEPTEMBER 26, 1973
 
 6
 On July 24, 1973, the National Labor Relations Board (hereafter Board), having received and investigated complaints charging the unfair labor practices proscribed by Section 8(b)(4)(B) of the Act, filed a petition for a temporary injunction, naming Beer Drivers & Salesmen's Local Union No. 888 (hereafter Local 888) and Teamsters Brewing & Soft Drink Workers Joint Board of California (hereafter Joint Board) as respondents. An order to show cause was issued, but before the hearing the parties stipulated among other things that Local 888 and Joint Board would refrain from the commission of certain specified acts. The stipulation was approved by the court. On September 19, 1973, the Board, having by that time received complaints against Alameda Central Labor Council (hereafter Labor Council), and believing that violations were continuing notwithstanding the stipulation, filed a second petition for injunction, naming Local 888, Joint Board, and Labor Council as defendants. The second petition took the same file number as the first petition. No order was made expressly permitting the joinder of Labor Council as a party defendant, but the court did, on September 19, 1973, on the basis of the second petition, issue a temporary restraining order and an order to show cause specifically directed to all of the respondents, including Labor Council, by name. Labor Council filed what it denominated a "special appearance" questioning the service of the order to show cause and temporary restraining order, and objecting to the manner in which it was brought into the case. As the Labor Council later conceded, the service was adequate. At the hearing on the order to show cause, the court noted the special appearance of Labor Council. Following a hearing, and on September 26, 1973, a temporary injunction was issued. It was served September 27, 1973.
 
 
 7
 While no appeal was taken from the order of September 26, 1973, appellant Labor Council complains that, by reason of the fact that the court made no formal order permitting joinder of Labor Council as a party, the order of September 26, 1973, and all subsequent orders affecting Labor Council, are void. Neither Local 888 nor Joint Board objected to the joinder. The district court, after hearing Labor Council's objections, issued the order of September 26, 1973, and by it enjoined Labor Council by name from doing certain acts in concert with the other defendants. If this did not constitute an exercise of the court's discretion to permit the joinder under Fed.R.Civ.P. 21, still Labor Council is in no position to complain. Normally a person becomes a party defendant because of the unfettered choice of the plaintiff. When a party is added in an on-going lawsuit, the approval of the court is required by Rule 21 in order to protect the parties already in the case whose rights might be seriously affected by the addition of a new party defendant. Rule 21 is not designed to protect the defendant to be added who is not entitled to notice. 3A J. Moore, Federal Practice P 21.05(1) at 21-24 (2d ed. 1974).
 
 THE ORDER OF NOVEMBER 6, 1973
 
 8
 On October 1, 1973, the Board filed a petition for an adjudication that the respondents were in contempt. Following an evidentiary hearing, and by order dated November 6, 1973 (filed November 7, 1973), each respondent was fined $5,000.00, which was suspended on the condition that defendants purge themselves of the contempt by complying with the terms of the temporary injunction and with certain posting and notice requirements. The order provided a $1,000.00 fine for each further violation.
 
 
 9
 The appeals from the order of November 6, 1973, are dismissed. The order assessed fines and suspended them on the condition that the contempt be purged. As such, it was an adjudication of civil contempt, interlocutory in character, from which no appeal lies. Hughes v. Sharp, 476 F.2d 975 (9th Cir. 1973); New York Telephone Co. v. Communications Workers of America, 445 F.2d 39 (2d Cir. 1971).
 
 THE ORDER OF DECEMBER 4, 1973
 
 10
 On November 20, 1973, the Board filed a motion for an order directing the payment of compliance fines and a motion to amend the temporary restraining order and to amend the contempt adjudication. Evidentiary hearings were held, and on December 4, 1973, the temporary injunction was amended to provide that, for a period of 45 days, the picketing of any person engaged in commerce doing business with the distributors with whom the respondents had a primary labor dispute was enjoined, and following the 45 days, picketing with more than two persons at any customer entrance was enjoined.
 
 
 11
 The order of December 4, 1973,[2] is here challenged on the ground that appeal from the order of November 6, 1973, (nonappealable, as above indicated), deprived the district court of jurisdiction. The simplest of several answers to this challenge is that an appeal from a nonappealable order does not deprive a district court of jurisdiction. Ruby v. Secretary of the United States Navy, 365 F.2d 385 (9th Cir. in banc 1966).
 
 
 12
 The order of December 4, 1973, is attacked on the ground that insufficient notice of hearing was given. The motion noticing a hearing for 1:30 P.M., November 21, 1973, was filed November 20, 1973, and served late in the afternoon of that day. On November 21, 1973, all parties appeared. Hearings were held and two Board witnesses were examined on that day. Counsel for the unions requested the right to recall these witnesses. The request was granted, but the right to recall the witnesses was not exercised. Thereafter hearings were held on November 26, 27, 28, and December 3 and 4, 1973. There is no indication that the parties were not fully aware of the issues or were in any way deprived of a full opportunity to explore the issues of fact or be heard on the issues of law. Under these circumstances appellants were not deprived of due process. The initial notice was shorter than the five days mentioned in Fed.R.Civ.P. 6(d), and if the court erred in failing to enter a formal order shortening the time, the error was harmless.
 
 
 13
 The order of December 4, 1973, is affirmed.
 
 THE ORDER OF MARCH 26, 1974
 
 14
 On March 26, 1974, after an evidentiary hearing, the court entered an order imposing fines against Local 888 and Labor Council in the amounts of $43,000.00 and $7,000.00 respectively. (These fines were the aggregates of the $5,000.00 fine plus $1,000.00 for each of the further violations 38 additional violations by Local 888 and two by Labor Council.) Of these amounts the sums of $33,000.00 and $5,000.00 respectively were suspended, and it was ordered that the amounts of $10,000.00 and $2,000.00 be paid within 30 days.
 
 
 15
 We consider the order of March 26, 1974, as distinguished from the order of November 6, 1973, to be a final order and appealable. The fines assessed were ordered to be paid within 30 days without any permission to otherwise purge the contempt. See New York Telephone Co. v. Communications Workers of America, supra.
 
 
 16
 The order of March 26, 1974, is attacked on several grounds. Underlying these attacks is the assertion that the order was criminal rather than civil in nature. The order of November 6, 1973, originally adjudicating the contempt, assessed a $5,000.00 fine and a $1,000.00 fine for each further violation, but provided that the contempt might be purged. A condition of the purge was that there be no further violations of the order of September 26, 1973.
 
 
 17
 The appellants were in a sense punished for conduct occurring prior to the time of the entry of the order assessing the fines. But the fines for future violations had been ordered and fixed in an amount on November 6, 1973, and the court, in assessing the amount of $43,000.00 against Local 888 and $7,000.00 against Labor Council, did no more than apply to the violations it found the fines which had been previously fixed.
 
 
 18
 The purpose of the order of November 6, 1973, was to get compliance. See Shillitani v. United States, 384 U.S. 364 at 368, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). The order of March 26, 1974, was in support of the order of November 6, 1973. It is true that no opportunity was given to purge the fines assessed in March (although a substantial amount was suspended), but inevitably, wherever a compliance fine is assessed and an opportunity given to purge, the failure to purge will bring about a due date. The due date occurs because the actor has failed to use the key to the jail which the court provided. See Penfield Co. v. SEC, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947). The occurrence of the due date does not transform civil proceedings, whose sole aim is to secure compliance, into a criminal proceeding. Were it otherwise, compliance with laws or orders could never be brought about by fines in civil contempt proceedings. Always the final order requiring payment will follow the act or omission which constitutes the failure to purge.
 
 
 19
 The cases of Shillitani v. United States, supra; United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Brotherhood of Locomotive Fireman and Enginemen v. United States, 411 F.2d 312 (5th Cir. 1969); and Southern Ry. v. Lanham, 403 F.2d 119 (5th Cir. 1968), relied upon by appellants, are not contrary. Since the proceeding was in civil contempt, it follows that the arguments based upon the court's failure to treat the proceedings as criminal are without merit.
 
 
 20
 The temporary injunction of September 26, 1973, enjoined certain acts as against 27 named retailers and "any other person engaged in commerce or an industry affecting commerce." It is now urged that there was a failure to prove that the violations on the basis of which the fines were assessed were within the quoted language, although it is conceded that the court in the first instance could have enjoined the acts as to "any person." By stipulation Local 888 agreed to refrain from certain acts as to the 27 named retailers "or any other person engaged in commerce or an industry affecting commerce." This or similar language is repeated several times in the stipulation.
 
 
 21
 Paragraph 5(g) of the complaint, admitted by Local 888's answer and denied upon information and belief by Labor Council, alleges that 27 named retailers are engaged in commerce or in an industry affecting commerce within the meaning of Section 8(b)(4)(i)(ii) of the Act (29 U.S.C. § 158). In the findings of violations supporting the order of March 26, 1974, none of the 27 retailers described in the September 26, 1973, order are named, and the findings are therefore dependent upon proof that the retailers named in the violations were engaged in commerce or an industry affecting commerce. The record supplies no details as to the amount of interstate business done by the various retailers. It does show that each of the retailers was doing business with a distributor described as "Coors" or with another distributor described as "Coors West," both of whom were engaged in commerce. It follows that each of the retailers was engaged in an industry which in some degree affected commerce. In passing upon the meaning of the term "affecting commerce," the Supreme Court said in NLRB v. Reliance Fuel Oil Corp., 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279 (1963):
 
 
 22
 . . . This Court has consistently declared that in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause.
 
 
 23
 In NLRB v. Denver Building & Construction Trades Council, 341 U.S. 675, 684, 71 S.Ct. 943, 949, 95 L.Ed. 1284 (1951), the Court said:
 
 
 24
 "Examining the Act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis." (National) Labor (Relations) Board v. Fainblatt, 306 U.S. 601, 607, 307 U.S. 609 (59 S.Ct. 668, 83 L.Ed. 1014); see also, (National) Labor (Relations) Board v. Jones & Laughlin Steel Corp., 301 U.S. 1 (57 S.Ct. 615, 81 L.Ed.2d 893).
 
 
 25
 It may very well be that the business of each retailer taken alone had a relatively small impact upon commerce, but the fact is that each retailer was the victim of a pattern of activity which, judged as a whole, would affect commerce. What might be "de minimis" in one circumstance is not necessarily "de minimis" in all others. We think this is the purport of the language used in NLRB v. Reliance Fuel Oil Corp., supra, at 226, 83 S.Ct. 312;
 
 
 26
 . . . The Act establishes a framework within which the Board is to determine "whether proscribed practices would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress. Whether or not practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce." Polish Alliance v. Labor Board, 322 U.S. 643, at 648, 64 S.Ct. 1196, 1199, 88 L.Ed. 1509. See also Labor Board v. Fainblatt, 306 U.S., at 607-608, 59 S.Ct. 668.
 
 
 27
 On the record there was sufficient evidence to warrant the finding that the retailers named were in an industry affecting commerce.
 
 
 28
 Assorted attacks are made upon the claims that the findings are not supported by sufficient evidence. In general these arguments treat each of the findings of violation as though each particular incident had happened without any relationship to any of the other incidents which occurred over a period of time commencing in June of 1973 and continuing until the time of the hearing. Viewing the entire record, we cannot say that the evidence was insufficient.
 
 
 29
 Local 888 urges that fines could not be assessed for the violations described in Findings Nos. 12, 13, 15, 16, and 18, which occurred prior to November 9, 1973, because appellants were not served with the order of November 6, 1973, (containing the language fixing the fines for future violations at $1,000.00 each), until November 9, 1973. As previously indicated, orders in civil contempt seek to punish future action while orders in criminal contempt seek to defer past action. The order of November 6, 1973, advised defendants that they should desist or suffer a $1,000.00 fine for each future violation. A party cannot be deterred from action by orders of which it is ignorant, and if a fine is imposed pursuant to an order unknown to a party then that party is being punished for past action. For that reason we do not believe that it was consistent with the deterrent purposes of a civil contempt proceeding to assess fines for acts done prior to the time of notice that the fines would be so assessed. For that reason the fine assessed in the total sum of $43,000.00 should be modified by reducing it in the amount of $5,000.00.
 
 
 30
 Otherwise we do not alter the order of March 26, 1974. Appellants, citing Gompers v. Bucks Stove & Range Co., supra, urge that, if any one of the violations was improperly found, the entire order must be reversed. The Gompers case was one in which imprisonment was ordered for violation of an injunction. The Court found that the defendants had been guilty of nine acts and imposed a sentence without indicating how the punishment was assessed as to each act. The Court held that a reversal as to any one act required a reversal of the entire order. In this case, however, the court could have properly assessed fines in the amount of $38,000.00. That act of suspending a portion of the fines was an act of pure grace, and the amount of the fine suspended was, no doubt, based upon the court's consideration of all of the evidence. While the court was limited by the form of the proceeding in that it could not assess fines for the purpose of punishing appellants for past acts, the court properly could have and should have considered, in determining how much grace should be extended to the appellants, the appellants' total conduct, including those violations of the temporary injunction for which fines could not be assessed in the civil proceeding.
 
 
 31
 The order of March 26, 1974, is reversed and remanded with directions to reduce the total fine assessed in the amount of $43,000.00 to $38,000.00. Otherwise, the order of March 26, 1974, including that part directing payment of the $10,000.00 fine, is affirmed.
 
 THE ORDER OF JUNE 28, 1974
 
 32
 On April 16, 1974, the Board filed a motion seeking further injunctive relief and compliance fines. On June 28, 1974, following a hearing, the court made findings of fact and conclusions of law, modified the temporary injunction, and ordered that Local 888 pay $10,000.00 of the fine previously imposed, but suspended, not later than 30 days from the entry of the order. An appeal from the June 28, 1974, order was taken by Local 888 acting alone.
 
 
 33
 It is urged that the contempt adjudication of June 28, 1974, was criminal in nature. We hold it to be a civil adjudication on the basis of what has been said with respect to the order of March 26, 1974.
 
 
 34
 In the order of March 26, 1974, the court assessed fines against Local 888 in the amount of $43,000.00 and suspended the payment of all but $10,000.00. In the June 28, 1974, order the court reimposed $10,000.00 of the remaining $33,000.00 of the fine which had been assessed and suspended by the March 26, 1974, order. It is urged that the court was without jurisdiction by reason of the pending appeal from the March 26, 1974, order.
 
 
 35
 We think it apparent that an appeal from a contempt order would not affect the court's jurisdiction to issue further contempt orders based on subsequent violations of the basic injunctive order. But since the order of June 28, 1974, rests in part upon the fines assessed in the March 26, 1974, order, the case presents a somewhat more difficult problem, not resolved in any cases cited to us or revealed by our own research.
 
 
 36
 The congressional purpose of the Labor Management Relations Act of 1947 (29 U.S.C. § 141) was to establish a policy which would protect the rights of employees, employers, and the general public from the dislocations of commerce which might be engendered by the commission of unfair labor practices. The National Labor Relations Board was given the power to hear and resolve disputes arising under the Act. Recognizing the need for maintenance of the economic status quo pending a resolution of the conflict, Congress imposed upon the Board a mandatory duty to seek injunctive relief when, after the investigation of a charge of unfair labor practices, an officer or regional attorney to whom the matter had been referred had reasonable cause to believe the charge to be true. 29 U.S.C. § 160(l ). Retail Clerks Union v. Food Employers Council, Inc., 351 F.2d 525 (9th Cir. 1965). The injunctive power given the district court by 29 U.S.C. § 160(l ) is ancillary to the power of the Board and does not extend to any final resolution of the conflict. In a sense, all of the district court's orders, when it acts under this section, are interlocutory. We look at the problem here presented against this background.
 
 
 37
 The general rule is that an appeal to the circuit court deprives a district court of jurisdiction as to any matters involved in the appeal. 9 J. Moore, Federal Practice P 203.11, at 734 (2d ed. 1975). However, the rule is not a creature of statute and is not absolute in character. It is our opinion that the rule should not be applied in those cases where the district court, as here, has a continuing duty to maintain a status quo, and where, as the days pass, new facts are created by the parties and the maintenance of the status quo requires new action. This result is not unlike that achieved by Fed.R.Civ.P. 62(c), which provides that, in the case of an appeal from an order granting an injunction, the district court does not lose jurisdiction to alter the injunction. We believe the rule should be, and we so hold that, in the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken.
 
 
 38
 The order is attacked on the ground that the court considered affidavits in arriving at its findings. It is contended that any findings based on affidavits alone are improper and some specific findings are attacked on the ground that the affidavits supporting them were adequately contradicted. What happened was this:
 
 
 39
 The motion for compliance fines was supported by voluminous affidavits, and in the motion the Board requested that at the hearing oral evidence be received only to resolve factual issues shown to be disputed by counter-affidavits submitted by the appellants. The court then ordered the appellants to file counter-affidavits. Early in the hearing the Board announced that it would produce live evidence on those issues which had been posed by the affidavits, but that where there was no factual dispute the Board would rely on the affidavits it had submitted.[3] At that time no objection was taken and no complaint was made as to this form of procedure. The court held hearings on May 3, 4, 7, 8, 9, 10, and 13. Not until the afternoon of May 13 and after the evidence was closed was any objection taken to the use of the affidavits.
 
 
 40
 We hold that a civil contempt proceeding, which may lead to the assessment of a fine, is a trial within the meaning of Fed.R.Civ.P. 43(a), rather than a hearing on a motion within the meaning of Fed.R.Civ.P. 43(e) (see Locklin v. Switzer Brothers, Inc., 348 F.2d 244 (9th Cir. 1965); and NLRB v. Rath Packing Co., 123 F.2d 684 (8th Cir. 1941))[4] and that the issues may not be tried on the basis of affidavits. A trial court may in a contempt proceeding narrow the issues by requiring that affidavits on file be controverted by counter-affidavits and may thereafter treat as true the facts set forth in uncontroverted affidavits. That is what the trial court did here.
 
 
 41
 It is urged, with citations to criminal cases, that when the court, in the order of March 26, 1974, suspended $33,000.00 of the $43,000.00 fine assessed, it was then powerless to reimpose the $10,000.00 of the $33,000.00 which had been suspended. We do not so view the matter. This is not a criminal case. The court's whole effort was designed to bring the appellants into compliance with the injunction. Everything that was done was part of continuous supervision over a continuous pattern of union activity. The word " suspend" connotes a temporary deferral (see Webster's Third New International Dictionary (1966); and see Bouvier's Law Dictionary, 3d Rev. (1914), for the related word "suspension"), and its use here suggests not a remission of the fine but a conditional suspension of its imposition.
 
 
 42
 We now turn to the claim that the findings are not supported by the evidence. Considering the uncontroverted affidavits and the oral evidence, we find that, assuming that all of the retailers mentioned in the findings were "in commerce," all of the findings are in fact supported except Nos. 3, 21, 22, and 33.
 
 
 43
 We are satisfied, however, that it was not shown that many of the retailers who are the subject of the findings were in commerce. Counsel for the Board simply did not make the same kind of in-commerce proof as to the retailers involved in the hearings leading to the June 28th order that was made as to those involved in the hearings leading to the March 26th order. The district court made no specific findings as to whether any of the retailers were in commerce or not. Because it appears to us that, in those cases where it was inadequate, the proof may be very readily supplied by evidence, we remand the order of June 28, 1974, to the district court with orders to take further evidence on the commerce issue and then to make specific findings.
 
 
 44
 After making such findings the court shall reconsider the penalties imposed by the June 28th order in light of the district court's findings on the commerce issue and our conclusions as to findings Nos. 3, 21, 22, and 33. It may be that the court will conclude that the penalties imposed were justified by the overall conduct of Local 888 notwithstanding that a few less than all of the violations are adequately proved, or it may be that the court will see fit to modify the penalty. On remand the determination of the fine levied by the order of June 28, 1974, is left to the discretion of the district court.
 
 
 
 [1]
 The caption is not exactly correct as to all of the appeals but does adequately describe all of the parties in the consolidated appeals and is used for convenience. Appeals from four separate orders generated six separate file numbers
 
 
 *
 The Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation
 
 
 [2]
 An appealable order. 28 U.S.C. § 1292(a)(1)
 
 
 [3]
 This procedure follows Rule 115 of the Rules of the Northern District of California
 
 
 [4]
 In the Rath Packing Co. case the affidavits were not used for the purpose of delineating the issues, but formed the entire basis for the action taken. Apparently there was no opportunity to present oral evidence