Raymond J. DONOVAN, Secretary of U.S. Department of Labor, Plaintiff-Appellee,

v.

Joseph P. MAZZOLA, Robert E. Buckley, Robert J. Costello, etc., et al., Defendants-Appellants.

No. 83–2456.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1984.

Decided May 28, 1985.

---

Lawrence Alioto, San Francisco, Cal., for defendants-appellants.

Thomas L. Holzman, Dept. of Labor, Washington, D.C., for plaintiff-appellee.

Before FERGUSON and NELSON, Circuit Judges, and JAMESON,* District Judge.

NELSON, Circuit Judge:

The trustees of a labor pension fund were ordered in July 1982 to post an indemnity bond and make restitution of lost assets to the fund. Civil contempt orders issued in September 1982 on the indemnity bond, in January 1983 on the restitution bond, and in May 1983 on both bonds. After compliance, fines were assessed, based upon the September and January orders, at a hearing in August 1983.

This court previously affirmed both the July 1982 judgment on the merits and the

---

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

September 1982 contempt sanction. *Donovan v. Mazzola,* 716 F.2d 1226 (9th Cir. 1983) (*Donovan I*), *cert. denied,* —— U.S. ——, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). The facts concerning the judgment on the merits are set forth in detail in that decision, *id.* at 1228–1231, and will not be repeated here. We now consider the validity of the September 1983 order which assessed contempt fines based upon orders issued in September 1982 and January 1983. We reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

This proceeding involves civil contempt orders following a judgment entered for the Secretary of Labor against fourteen present and former members of the Board of Trustees of the Pension Fund of Local 38 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry ("the trustees"). The trustees were held to have violated their fiduciary obligations under the Employees Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The judgment ordered the trustees to post an indemnity bond of $1 million and to make restitution to the pension fund of some $400,000 in lost assets. The judgment also provided for the appointment of an investment manager for the pension fund.

Under the judgment, the indemnity bond had to be posted by September 7, 1982 while the restitution money was due by October 7, 1982. On September 30, 1982, the district court held a hearing on the Government's motion to show cause why the trustees should not be held in contempt for their failure to post the indemnity bond. The court found the trustees in contempt and allowed them until November 1, 1982 to purge themselves; if the indemnity bond was not posted by that date, fines of $100 per day per trustee would begin to accrue on November 2. This contempt order was appealed on October 22, 1982, and was affirmed together with the final judgment. *Donovan I,* 716 F.2d at 1231, 1239–40.

Three hearings followed the September 30 order. After another motion to show cause, a contempt hearing was held in January concerning both the indemnity bond and the trustees' failure to make restitution, an obligation which had taken the form of a $600,000 supersedeas bond for restitution (the "restitution bond"). On January 13, 1983, the court found the trustees in contempt on the restitution bond, allowed them until February 13, 1983 to purge themselves, and ordered that otherwise fines would accrue at $100 per day per trustee starting on February 14, 1983. The court made clear that the restitution bond fines were to be in addition to the indemnity bond fines. The restitution bond was not filed by February 13. Unlike the September 30 order, this order was not appealed.

In May 1983 the court held a hearing on a motion to show cause why the trustees should not be imprisoned as a further coercive measure towards the posting of both the indemnity bond and the restitution bond. On May 9 the trustees were held to be continuing in civil contempt and were ordered jailed if both bonds were not filed by May 23. This order was not appealed.

The indemnity bond was posted on May 20, 1983 and on June 24, 1983 a bond securing the restitution requirement was filed. None of the trustees had been jailed, and the fines had not been assessed.

On August 25, 1983, the district court held a fine assessment hearing. From the bench, the judge stated a number of conclusions, later reflected in a judgment entered September 12, 1983. Because of the trustees' good faith efforts after May 10, any fines due on and after that date were remitted. Fines were assessed at $100 per trustee per day for contempt on the indemnity bond, however, and at the same rate for contempt on the restitution bond. On the indemnity bond, fines were ordered for 188 days, from November 2 through May 9, amounting to $18,800 for each of the thirteen trustees liable on that bond (one was not liable). In addition, the contempt fines on the restitution bond were assessed for 84 days, from February 14 through May 9, amounting to $8,400 for each of the four-

teen trustees. The trustees have appealed the order.

The *Donovan I* decision, affirming the judgment on the merits and the September 30, 1982 contempt order, was first issued on August 23, 1983 and again, as amended (for typographical errors), on October 22, 1983. The mandate in *Donovan I* did not issue until January 17, 1984, having been stayed until the Supreme Court's disposition of the petition for writ of certiorari. The trustees' lawyer referred to *Donovan I* at the August 25 hearing, and the district judge mentioned the opinion in his September 12, 1983 order following the fine assessment hearing.

The fine assessment order which is here appealed, therefore, was issued before the appellate court had handed down the mandate in *Donovan I*, though the parties and the judge were aware of the appellate decision. The trustees' motion to stay the September 30, 1982 contempt order pending disposition of the *Donovan I* appeal had been denied, and the district judge apparently felt that he retained jurisdiction over the contempt order on the indemnity bond while an appeal of this order was pending before the appellate court.

ISSUES PRESENTED:

I. *Indemnity Bond.* Whether the district court had jurisdiction to quantify contempt sanctions assessed under its September 30, 1982 order while the appeal of that order was pending before this court in *Donovan I.*

II. *Restitution Bond.* A. Whether the January 1983 and May 1983 contempt orders concerning the restitution bond should be given *res judicata* effect.

B. Whether the district court abused its discretion in refusing to hear evidence, at the August hearing, of collective compliance efforts.

III. Whether the district court abused its discretion in refusing to hear evidence of individual impossibility defenses before imposing individual fines upon each of fourteen defendants for their failure to post the bonds under a joint and several obligation.

DISCUSSION

I. *Indemnity Bond.* District court's jurisdiction to quantify contempt sanctions assessed under its September 30, 1982 order while the appeal of that order was pending before this court in *Donovan I.*

■ The Ninth Circuit follows the general rule, with some exceptions, that the filing of a notice of appeal divests the district court of jurisdiction over the matters appealed. *See, e.g., Miranda v. Southern Pacific Transportation Company,* 710 F.2d 516, 519 (9th Cir.1983); *Davis v. United States,* 667 F.2d 822, 824 (9th Cir.1982). This rule has been recently applied to contempt orders. *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1145 n. 1 (9th Cir.1983) (order quantifying sanction is void for lack of jurisdiction during pendency of appeal); *Matter of Thorp,* 655 F.2d 997, 999 (9th Cir.1981) (criminal contempt finding void because mandate from appellate decision on civil contempt on same issue had not yet issued). A 1976 case, however, stresses the exceptions to this rule in coercive civil contempt orders enforcing a labor injunction. *Hoffman v. Beer Drivers and Salesmens' Local No. 888,* 536 F.2d 1268, 1276–77 (9th Cir.1976). The *Hoffman* court held that:

in the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, *even though* in the course of that supervision the *court acts upon* or modifies the *order from which the appeal is taken.*

*Id.* [emphasis added].

We must determine whether to follow *Hoffman* or *Shuffler* and *Thorp* in this case. In *Thorp* the court imposed fines and imprisonment to coerce a witness to respond, 655 F.2d at 999, and in *Shuffler* the court used fines to compel compliance with a money judgment and to compensate the prevailing party for delay. 720 F.2d at

1144. In *Hoffman* fines were imposed to compel compliance with an injunction against picketing. 536 F.2d at 1271–73. *Shuffler* and *Hoffman* differ on the extent to which the district court's continued enforcement of the order being appealed is permitted. Since *Shuffler*'s use of contempt to enforce a money judgment is most similar to the fact pattern before this panel, the *Shuffler* rule of complete transfer of jurisdiction to the appeals court should properly be applied to this case.

█ We conclude, therefore, that the district court lacked jurisdiction over the contempt order quantifying sanctions on the indemnity bond. *Cf. Ruby v. Secretary of the Navy,* 365 F.2d 385, 388–89 (9th Cir. 1966) (when "a notice of appeal does not transfer jurisdiction to the court of appeals, then such jurisdiction must remain in the district court: it cannot float in the air"). The district court held hearings in January, May and August during the pendency of *Donovan I,* when the appellate court had jurisdiction over the indemnity contempt sanction and thereby deprived the district court of jurisdiction over that issue. Under *Shuffler,* the assessment of fines at the August 1983 hearing is therefore void to the extent it was based upon the September 30, 1982 order. *See Shuffler,* 720 F.2d at 1145 n. 1. The district court also lacked jurisdiction over the imprisonment sanction issued in May to the extent that it was based upon continuing violation of the September 30, 1982 order. The district court must therefore consider evidence on the indemnity bond sanctions for the whole period in question, September 30 through May 9.

*II. Restitution bond.*

█ It remains for us to consider the validity of the fine assessment at the August 1983 hearing as far as it quantified the fines imposed in the January 1983 contempt order on the restitution bond. The district court had jurisdiction over the restitution bond contempt order and the fines assessed pursuant to it. We therefore consider the trustees' next claim: that they should have been permitted to present evidence at the August hearing of compliance efforts. Appeal of one order does not necessarily deprive the district court of jurisdiction over issues not raised in that order. *See, e.g., Oliver v. Kalamazoo Board of Education,* 640 F.2d 782, 788 (6th Cir. 1980). *Hoffman* supports this conclusion. *Id.,* 536 F.2d at 1267. *Compare Shuffler,* 720 F.2d at 1145 (involved only one issue of contempt).

A. *Res judicata effect of the January 1983 and May 1983 contempt orders concerning the restitution bond.*

The trustees argue that the district judge improperly refused to consider evidence at the August fine assessment hearing because this opportunity had been presented at the January and May hearings, and sanctions were not imposed for dates subsequent to the May hearing. The Government responds that this court's affirmance of the September 30, 1982 order and the finality of the January and May orders precludes the trustees' claim that their efforts to present evidence, of their attempts to comply from September 30 to May 10,[1] were improperly denied at the August fine assessment hearing.

Only the January and May orders insofar as they concerned the restitution bond are relevant here. To recapitulate the facts, the January order found the trustees in continuing contempt of court for their failure to post the restitution bond from its due date, October 7, 1982, through the hearing date of January 13, 1983. The

---

1. Neither party on appeal nor the court at the hearing below discussed the presentation of evidence after May 10. The district court determined that it would not impose fines as to restitution bond sanctions after May 10, even though the bond was not filed until June 10, due to the good faith efforts of the trustees. Since the district court had jurisdiction over the restitution bond, this court will not disturb that finding. The district court also remitted indemnity bond fines from May 10 until May 20, the date the bond was filed. Since this action was void for lack of jurisdiction, on remand the district court is not bound by this limitation.

order allowed the trustees until February 13, 1983 to purge themselves, and ordered that otherwise fines of $100 per trustee per day would begin on February 14, 1983. The May order found that the trustees were continuing in civil contempt from the previous hearing date, January 13, 1983, through the hearing date of May 9, 1983. The trustees were ordered jailed if both bonds were not filed by May 23, 1983.

██ The Government argues that the January and May orders were final judgments, and that the matters adjudicated by these orders—that the trustees continued in contempt from October 7, 1982 through May 9, 1983—are therefore *res judicata*. In consequence, the trustees could not challenge the judgment of contempt at the August hearing. This argument rests upon the assertion that the January and May orders were final judgments, for it is "familiar law that only a final judgment is *res judicata.*" *G. & C. Merriam Co. v. Saalfield,* 241 U.S. 22, 28, 36 S.Ct. 477, 480, 60 L.Ed. 868 (1916). *See Russell v. C.I.R.,* 678 F.2d 782, 786 (9th Cir.1982). *See also Horner v. Ferron,* 362 F.2d 224, 230 (9th Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966). To determine the finality of the order, we consider the criteria used to determine finality for the purposes of 28 U.S.C. § 1291, on finality as a prerequisite for appealability.

██ The January restitution fine order and the May imprisonment order were conditionally phrased. Each ordered the trustees to comply by a certain date some weeks hence, after which fines would begin to accrue if non-compliance continued. We may examine the September 30, 1982 order, which was appealed to this court, and supplies a model for the January and May orders.[2] The September 30 order imposed sanctions beginning November 1 but was appealed October 22, while the trustees still retained the opportunity to avoid sanctions entirely through prompt compliance.[3]

██ The contempt order satisfied several of the well-established criteria for finality of a civil contempt order, but lacked one essential factor. Two requirements were present: the order against the trustees followed the final judgment on the merits, and the appeal was taken together with the appeal from the final judgment. *See Shuffler v. United States,* 720 F.2d 1141, 1145 (9th Cir.1983). *Compare Hughes v. Sharp,* 476 F.2d 975 (9th Cir.1973) (civil contempt order remains interlocutory if against party during proceedings). Sanctions had not yet been imposed, however.

The requirement of a sanction to render a contempt order final under section 1291 is expressed in *Alexander v. United States,* 201 U.S. 117, 121–22, 26 S.Ct. 356, 357–58, 50 L.Ed. 686 (1906):

---

**2.** The *Donovan I* opinion did not discuss the source of appellate jurisdiction over this order, which was considered together with the appeal from the final judgment. The issue was apparently not presented by the parties to that court. The *Donovan I* panel's decision is *res judicata* as to its subject-matter jurisdiction over the September 30, 1982 order. *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Ass'n.,* 455 U.S. 691, 706–07, 102 S.Ct. 1357, 1366–67, 71 L.Ed.2d 558 (1982); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinea,* 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982). Even if the issue of jurisdiction was not argued to the *Donovan I* panel, if the parties had the opportunity to litigate the question of jurisdiction, it may not be reopened in a collateral attack upon the previous judgment. *Sherrer v. Sherrer,* 334 U.S. 343, 350, 68 S.Ct. 1087,

1090, 92 L.Ed. 1429 (1948); *Underwriters National,* 455 U.S. at 710, 102 S.Ct. at 1369.

**3.** Practical considerations buttress the conclusion that the September 30 interlocutory order was not final and appealable on October 22. The trustees had 60 days to appeal a final order, FRAP 4(a)(1) (U.S. as party), a period which should not have begun until they had violated the order after November 1. Otherwise, the coercive purpose of the civil contempt order with a grace period between September 30 and November 1 is thwarted. Rather than devoting all of their efforts to complying before November 1, the trustees apparently chose to safeguard attempts to comply with simultaneous preparations for appeal, should compliance fail. The time for appeal should not run until it is clear that the contempt sanction has been incurred, in this case after November 1, for otherwise there is nothing to appeal.

... [A]n order may coerce a witness, leaving to him no alternative but to obey or be punished ... but from such a ruling it will not be contended there is an appeal. Let the court go further and punish the witness for contempt of its order, then arrives a right of review.... This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory....

*Id.* *See also Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984). Our circuit has frequently held that an adjudication of civil contempt is not appealable until sanctions have been imposed. *Weyerhaeuser Company v. International Longshoremen's and Warehousemen's Union Local 21,* 733 F.2d 645 (9th Cir.1984); *Hoffman v. Beer Drivers & Salesmen's Local No. 888,* 536 F.2d 1268, 1272–73 (9th Cir.1976). *See also Steinert v. United States,* 571 F.2d 1105, 1107 (9th Cir.1978) (*dicta*). *Compare Shuffler,* 720 F.2d at 1145 (since contempt order required immediate payment of $1,000/week into court, sanction had been imposed and was appealable though final quantification of fine not yet determined); *Falstaff Brewing Corp. v. Miller. Brewing Co.,* 702 F.2d 770, 777 (9th Cir. 1983) (penalty ordered paid to court but motion for refund would be entertained if compliance obtained within ninety days of order). Until the imposition of sanctions, therefore, the September 1982, January, and May orders were interlocutory.

Interlocutory orders do not have *res judicata* effect. *See, e.g., Russell,* 678 F.2d at 786. The January and May orders cannot be viewed as final for the *res judicata* purposes of treating the orders as barring all arguments on the duration of the trustee's contempt as untimely. In this case, the orders do not preclude presentation of evidence at the fine assessment hearing based upon *res judicata* alone.

B. *Whether the district court abused its discretion in refusing to hear evidence on collective compliance efforts concerning the joint obligation.*

The doctrine of *res judicata* does not preclude the trustees from presenting evidence of their compliance efforts on the restitution bond from January through May, but this does not end the inquiry. We must determine whether the district judge committed an abuse of discretion in refusing to hear evidence in August. We therefore address the trustees' argument that they should have been allowed to present evidence at the fine assessment hearing concerning compliance efforts.

The district court stated at the August hearing that the trustees' opportunity to present evidence for the period preceding May 10 had passed, since such an opportunity had been available at the May hearing. The district court apparently understood its obligation to consider evidence at a fine assessment hearing, and considered that this opportunity had already been supplied. *See Pennwalt Corp. v. Durand-Wayland,* 708 F.2d 492, 493, 495 (9th Cir.1983) (evidence must be considered on reasonableness of fee assessed even if award quantifies a previously issued sanction order). The judge's consideration of evidence at each hearing will be discussed *seriatim.*

1. *September 30, 1982 order and Donovan I.*

■■■ *Donovan I* affirmed the September 30, 1982 order for contempt on the indemnity bond at $100 per day per trustee starting November 2, 1983. 716 F.2d at 1240. The appellate court found that evidence had been considered. *Id.* The *res judicata* effect of this order, which was affirmed in *Donovan I,* does not eliminate the district court's obligation to hear evidence at subsequent contempt hearings, since present inability to comply is a complete defense and past ability to comply is not *res judicata* as to continuing ability to comply. *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) (*"Rylander I"*); *Maggio v. Zeitz,* 333 U.S. 56, 75–76, 68 S.Ct. 401, 411–412, 92 L.Ed. 476

(1948). *Cf. United States v. Rylander*, 714 F.2d 996, 1002 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984) (*"Rylander II"*). Ability to comply is a crucial inquiry for the court's decision concerning coercive civil contempt orders, and "a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey and whether failure to do so constitutes deliberate defiance or willful disobedience which a coercive sanction will break." *Falstaff*, 702 F.2d at 781 n. 6 (citing *Maggio*, 333 U.S. at 76, 68 S.Ct. at 411).

### 2. *January hearing on both bonds.*

The district court was thus obliged to consider evidence at the January hearing on the trustees' ability to post the restitution bond. The record indicates that most of the discussion at that hearing concerned the indemnity bond, and the court's refusal to approve an agreement by the parties to supply letters of credit rather than a bond to satisfy that obligation. On the restitution bond, the record shows that the court twice told the trustees' attorney that he would hear nothing further, after beginning the hearing with the statement that "I don't think I need very much argument on this matter." The court agreed with the Government that "once again, nothing has been offered by the defendants to show inability to comply with the judgment."

■ The district judge apparently determined that the two reasons given by the trustees for non-compliance—first, their agreement with the Government to supply letters of credit instead of a bond on indemnity and second, the Government's unsubordinated judgment lien on the trustees' property—did not constitute inability to comply. He did not abuse his discretion in limiting the trustees' attorney's comments and ruling that the excuses offered did not constitute collective inability to comply with the restitution bond. Evidence on ina-

bility to post the restitution bond from October 7 through the hearing date, January 10, was heard at the January hearing.[4]

### 3. *May hearing on both bonds.*

■ The imprisonment contempt order was a sanction for both the indemnity and restitution bonds. The hearing concerned both the restitution bond and indemnity bond. The imprisonment sanction explicitly concerned the trustees' failure to post *both* bonds, and we cannot determine from the record the role played in the court's decision by the trustees' failure to post both bonds. *See Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 449–50, 31 S.Ct. 492, 501–02, 55 L.Ed. 797 (1911) (where contempt sentence does not indicate amount of punishment for each act, entire sentence must be reversed if one violation was improperly found). *Compare Hoffman*, 536 F.2d at 1275. Thus, the indemnity sanction cannot be distinguished from the restitution issue, and the May hearing should not have precluded later presentation of evidence on the restitution bond. Since jurisdiction was lacking over the indemnity bond, evidence on efforts to post both bonds should be allowed on remand: from January 10 through May 9 on the restitution bond, and from September 30 through May 20 on the indemnity bond.

### III. *Evidence concerning individual compliance efforts.*

It remains to clarify for remand purposes whether, as the trustees argue, the trial judge should hear *individual* impossibility defenses as well as the evidence of *collective* impossibility discussed above. When individual defenses were offered by the trustees' attorney at the May hearing, the court responded that since the obligation was joint and several, individual impossibility defenses would "waste time." At the August hearing, the court again refused to hear offers of proof on impossibility defenses for individuals, though he indi-

---

**4.** Since fines were not imposed until February 14, however, evidence on the trustees' efforts during this earlier period is not directly at issue.

cated that he thought that individual ability to pay was an important factor.[5]

The trustees contend on appeal that the district court did not make individual assessments of ability to comply with the judgment. This argument has merit. While the court repeatedly found that the collective assets of the trustees could satisfy a joint obligation, *see, e.g., Donovan I,* 716 F.2d at 1240, it never found that a single individual was capable of satisfying the whole obligation. Thus before assessing contempt fines on individuals, because each trustee had failed in his "individual" obligation to post both bonds, the court should have considered the evidence presented concerning whether certain individual trustees had impossibility defenses on their ability to singlehandedly supply the total funds for both bonds. The district court did not do so. It imposed uniform fines on each defendant amounting to $27,200 for each of thirteen trustees and $8,400 for the fourteenth trustee (who was liable only on the restitution bond).

*Donovan I*'s affirmance of the September 30 order noted the "collective" ability to comply and did not reach the issue of the court's obligation to hear evidence before assessing fines individually. 716 F.2d at 1240. The district court's alternative was to impose a collective fine upon the trustees, whom it concluded had a collective ability to comply. *See, e.g., Landman v. Royster,* 354 F.Supp. 1292, 1301 (E.D.Va. 1973) (joint and several fine of $25,000 upon all defendants). Before assessing individual fines even upon those trustees who had supplied their share of the funds and upon those who claimed poverty, the court should have considered evidence of individual impossibility defenses. Upon remand, it should do so.

CONCLUSION

The fine assessment based upon the indemnity bond contempt order is void for lack of jurisdiction and is remanded. The fine assessment based upon the restitution bond contempt order does not have jurisdictional defects but is reversed and remanded because it is inextricably intertwined with the indemnity bond issue and because the district judge abused his discretion in refusing to consider evidence of individual impossibility defenses in imposing individual fines for violation of a joint and several obligation. Upon remand, the district judge should consider evidence from September 30, 1982 through May 20, 1983 as to indemnity bond sanctions, and from January 13, 1983 through May 9, 1983 on the restitution bond sanctions.

---

5. The court asked the trustees' attorney, "Have any of your clients signed an affidavit that they are impoverished and have no means of making any payment?" When one trustee said to the judge, "I signed my house away. What else can I do? I have no other money. What else can I do?", the judge responded that "the court will not punish for contempt where a person has complied to the very best of his ability."