## UNITED STATES v. GIRGENTI.

### No. 10457.

United States Court of Appeals
Third Circuit.

Argued Jan. 7, 1952.

Decided Feb. 6, 1952.

Rehearing Denied Feb. 26, 1952.

---

17. See paragraphs 8, 9, and 10 of the Kervick affidavit.

Joseph E. Gold, Philadelphia, Pa. (L. L. Ettinger, Leon Katz, Philadelphia, Pa., on the brief), for appellant.

Max H. Goldschein, Sp. Asst. to Atty. Gen. (Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., Vincent P. Russo and Drew J. T. O'Keefe, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before BIGGS, Chief Judge, GOODRICH, Circuit Judge, and BURNS, District Judge.

GOODRICH, Circuit Judge.

This appeal from a conviction for contempt grows out of the same grand jury investigation which produced United States v. Hoffman, 3 Cir., 185 F.2d 617;

Hoffman v. U. S., 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; United States v. Singleton, 3 Cir., 193 F.2d 464; United States v. Greenberg, 3 Cir., 1951, 187 F. 2d 35; Id., 3 Cir., 1951, 192 F.2d 201, certiorari granted 72 S.Ct. 365.

Preliminary to our consideration of the self incrimination question, however, counsel for the appellant raises another point which we shall dispose of quickly. He challenges the right of the grand jury to summon his client for examination in the Eastern District of Pennsylvania concerning events which took place in New Jersey. He says that the grand jury here may only make presentment for crimes committed in the Eastern District of Pennsylvania and that the jury goes beyond its authority when it makes inquiry about affairs in New Jersey.

There are two conclusive answers to appellant's argument. One is that it is based on the fallacy that something which happens in New Jersey cannot result in a crime which takes place in the Eastern District of Pennsylvania. There is not the slightest doubt that if people conspire in New Jersey to rob a national bank, run an illicit still or conceal tax liability all in the Eastern District of Pennsylvania, the grand jury in the latter district may inquire into it. To appellant's argument that this grand jury had not found anything about affairs in New Jersey that affected matters in the Eastern District of Pennsylvania, we answer that the grand jury had not then and has not now completed its investigation. What it will eventually find no one, not even appellant's counsel, knows.

The second answer, also a complete one, to appellant's contention is found in Blair v. United States, 1919, 250 U.S. 273, 39 S.Ct. 468, 471, 63 L.Ed. 979. In the words of Mr. Justice Pitney, the witness "is not entitled to challenge the authority of the court or of the grand jury, provided they have a *de facto* existence and organization. * * * witnesses are not entitled to take exception to the jurisdiction of the grand jury or the court over the

particular subject-matter that is under investigation."

The second question is much harder. Has the appellant made the showing which is required to bring him within that provision of the Fifth Amendment protecting one from self incrimination? We approach the subject with the Supreme Court's decision of the above cited Hoffman case in mind; also our other recent decisions on the same subject and the authorities discussed in the opinions in those cases.

The question at which the witness balked was: "Now, who operated the Maple Shade Gambling House?" Girgenti, the witness, and now appellant, refused to answer, on advice of counsel, claiming that to answer the question would tend to incriminate him. He was brought before the District Court on contempt charges. There he made a showing of what he relied upon to constitute enough to convince the Court that the witness should not be compelled to answer the question. The rule stated in the Hoffman decision was recognized: the witness is not the sole judge, the matter is one for the Court to decide.

We turn then to the items offered in support of the position.

A. Newspaper clippings from Philadelphia and New Jersey newspapers concerning a raid on a gambling establishment at Maple Shade, New Jersey. These news stories described the raid, stated that 187 men were arrested in it, and mentioned Joseph Girgenti, appellant here, as one considered "top man" by the police.

We do not need to set the limit of how far one may go in using newspaper articles as evidence of the facts therein stated. The Supreme Court told us in Hoffman that such material should be considered on this question of self incrimination. See also United States v. Weisman, 2d Cir., 1940, 111 F.2d 260, 262.

B. Record of indictment and conviction of Girgenti for keeping a gambling resort.

C. Offered, but not admitted, a letter from the Director of Public Safety in Camden, New Jersey, giving Girgenti's criminal record. This shows a list of convictions and arrests from 1932 on starting with rape and robbery conviction followed by a sentence of seven years in 1932.

D. On behalf of the defendant there was an attempt made to prove that the Special Assistant to the Attorney General conducting the investigation himself had assistants working on the investigation of possible criminal violation of the tax statutes.

E. Defendant also exhibited letters from the Collector of Internal Revenue in Camden stating that Girgenti had not filed partnership tax returns nor Federal Insurance Contributions Act or Federal Income Tax Withholding Act returns.

How does all this add up in a showing of the likelihood of compulsory self incrimination? It is acknowledged that the self incrimination must be that of a federal offense. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210, 82 A.L.R. 1376; Camarota v. United States, 3d Cir., 1940, 111 F.2d 243. The criminal record shown by Girgenti relates to state offenses only. Its relevancy must come in showing that he is the kind of a man who might be expected to be in trouble with the law. It is character testimony in reverse; here the witness wants evidence of his bad record to show that whatever he happened to be doing at the time was probably illegal. Then being a person of such bad character, he says, I was picked up and convicted of an offense at a gambling establishment in New Jersey which the newspapers said had 187 persons in it at the time it was raided. Somebody, he continues, must have been employed by the proprietor to run this place.

Now comes the heart of the argument. Girgenti, through counsel, argues that if he should admit responsibility for management of this establishment with its scores of patrons and, presumably, some employees, he has pretty effectively aided the start of a successful prosecution against himself for a federal offense. The federal offense is the failure to file the required returns for withholding, partnership returns, social security returns. That the intentional failure to file such returns on the part of one who has the duty to file them

is a crime, there is no doubt.[1] The Federal Constitution, it is argued on Girgenti's behalf, protects him from being led into such a trap.

We conclude that in the light of the latest Supreme Court case on the point, Girgenti has made sufficient showing to entitle him to the protection of the privilege against self incrimination. The showing, we think, is stronger than in Hoffman and was evidently made with the Hoffman decision in mind. If our conclusion permits, in the individual case, a rascal to go unwhipped or a villain unhung, it is because Americans have thought it better public policy to lose a conviction now and then than to force a conviction from the defendant's own mouth. It follows that the sentence imposed upon Girgenti for contempt cannot stand.

The judgment of the District Court will be reversed.

1. Failure to file returns required by 53 Stat. 70 (1939), 26 U.S.C.A. § 187 (partnership returns) is a federal offense punishable under 53 Stat. 290 (1939), 26 U. S.C.A. § 2707. Failure to withhold and report the taxes on employees' wages under 57 Stat. 126 (1943), as amended, 26 U.S.C.A. § 1622, is punishable under 57 Stat. 137 (1943), as amended, 26 U.S.C. A. § 1626. Failure to make deductions and reports as required by 53 Stat. 175 (1939), as amended, 26 U.S.C.A. §§ 1400–1432, subjects the employer to the penalties enumerated in 26 U.S.C.A. § 1821 and 26 U.S.C.A. § 2707.