In the Matter of a Grand Jury Subpoena Directed to MARC RICH & CO., A.G.

MARC RICH & CO., A.G., a Swiss Corporation, Appellant,

v.

UNITED STATES of America, Appellee.

No. 501, Docket 82–6226.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1982.

Decided May 4, 1983.

Certiorari Denied June 27, 1983.
See 103 S.Ct. 3555.

Marvin E. Frankel, New York City (Proskauer, Rose, Goetz & Mendelsohn, and John W. Ritchie and Robert C. Finkel, New York City, of counsel), for appellant.

Morris Weinberg, Jr., Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., and Gerard E. Lynch, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before VAN GRAAFEILAND and PIERCE, Circuit Judges, and WYATT, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Marc Rich & Co., A.G. appeals from an order of the United States District Court for the Southern District of New York (Sand, J.), which held it in civil contempt for failing to comply with the court's order directing it to produce certain records pursuant to a grand jury subpoena duces tecum and which imposed a coercive fine to take effect upon the disposition of this expedited appeal. We affirm.

Appellant is a Swiss commodities trading corporation dealing in the international market in bulk raw materials such as petroleum, metals, and minerals. Its principal office is in Zug, Switzerland. Although it has forty branch offices in thirty countries around the world, it has no office in the United States. However, Marc Rich & Co. International Limited (International), a wholly-owned subsidiary of appellant, does business in the State of New York. The same five persons serve as the directors of the two companies. Three board members are Swiss residents, and two, Marc Rich and Pincus Green, reside in the United States and are employed by International as traders.

In March, 1982, a federal grand jury in the Southern District of New York was investigating an alleged tax evasion scheme, involving appellant, International, and the principals of each company, whereby, during 1980, International diverted a minimum of $20 million of its taxable income to appellant. On March 9, 1982, a grand jury subpoena duces tecum was served on International for the production of business records relating to crude oil transactions during 1980 and 1981. International complied with the subpoena. On April 15, 1982, a grand jury subpoena duces tecum, addressed to appellant and served on International, called for production by appellant of similar records.

On June 9, 1982, appellant moved to quash the subpoena on the grounds that appellant was not subject to the in personam jurisdiction of the court and that Swiss law prohibited the production of the materials demanded. In an opinion dated August 25, 1982, Judge Sand denied the motion to quash, finding that personal jurisdiction existed and that the operation of Swiss law was no bar to the production of the documents. When appellant persisted in its refusal, Judge Sand adjudged it to be in civil contempt. Appellant's arguments on appeal center principally on the issue of jurisdiction.

## DISCUSSION

Because the grand jury is a centuries-old, common law institution, adopted without definition by the framers of our Constitution, its historical purposes and functions have been explored at length by judges and legal scholars. *See* Wright, *Federal Practice and Procedure: Criminal 2d* § 101 (1982). All are agreed that a grand jury has both the right and the duty to inquire into the existence of possible criminal conduct, *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972), and "[i]ndispensable to the exercise of its power is the authority . . . to require the production of evidence," *United States v. Mandujano,* 425 U.S. 564, 571, 96 S.Ct. 1768, 1773, 48 L.Ed.2d 212 (1976). "A grand jury's investigation is not fully carried out until every available clue has been run

---

* Of the Southern District of New York, sitting by designation.

down and all witnesses examined in every proper way to find if a crime has been committed . . . ." *United States v. Stone,* 429 F.2d 138, 140 (2d Cir.1970). The jury's "investigative power must be broad if its public responsibility is adequately to be discharged." *United States v. Calandra,* 414 U.S. 338, 344, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). Since the mere possibility that violations of federal law have occurred is sufficient authority for a grand jury to act, *United States v. Sisack,* 527 F.2d 917, 920 (9th Cir.1976), its investigation in the instant case cannot be faulted.

■ Congress has made clear its intent that this nation's income tax laws are applicable to foreign corporations. *See, e.g.,* 26 U.S.C. §§ 881–884; Bittker and Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶¶ 17.01–17.43 (3d ed. 1971). Under well-settled rules of international law, the authority of Congress to impose punishment for violation of these laws is equally clear. Of the five generally recognized principles of international criminal jurisdiction—territorial, nationality, protective, universality, and passive personality—*Introductory Comment to Research on International Law, Part II, Draft Convention on Jurisdiction with Respect to Crime,* 29 Am.J.Int'l Law 435, 445 (Supp. 1935), the territorial and protective principles justify the enforcement of penal revenue statutes such as 26 U.S.C. §§ 7201 and 7206. The territorial principle is applicable when acts outside a jurisdiction are intended to produce and do produce detrimental effects within it. *United States v. Pizzarusso,* 388 F.2d 8, 10 (2d Cir.), *cert. denied,* 392 U.S. 936, 88 S.Ct. 2306, 20 L.Ed.2d 1395 (1968). Under the protective principle, a state "has jurisdiction to prescribe a rule of law attaching legal consequences to conduct outside its territory that threatens . . . the operation of its governmental functions, provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems." *Id.* (quoting Restatement (Second) of Foreign Relations Law § 33 (1965)).

Where, as here, the territorial principle is applicable, the Government may punish a defendant in the same manner as if it were present in the jurisdiction when the detrimental effects occurred. "The principle that a man who outside of a country wilfully puts in motion a force to take effect in it is answerable at the place where the evil is done, is recognized in the criminal jurisprudence of all countries." *Ford v. United States,* 273 U.S. 593, 623, 47 S.Ct. 531, 541, 71 L.Ed. 793 (1927) (quoting 2 *Moore's International Law Digest* § 202, at 244 (1906)).

[I]t is certain that the courts of many countries, even of countries which have given their criminal legislation a strictly territorial character, interpret criminal law in the sense that offences, the authors of which at the moment of commission are in the territory of another State, are nevertheless to be regarded as having been committed in the national territory, if one of the constituent elements of the offence, and more especially its effects, have taken place there.

*The S.S. Lotus,* 1927 P.C.I.J., ser. A, No. 10, at 23, *reprinted in* 2 Hudson, *World Court Reports* 23, 38 (1935). *See also Melia v. United States,* 667 F.2d 300, 303–04 (2d Cir.1981) (quoting *Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911)); *United States v. Aluminum Co. of America,* 148 F.2d 416, 443 (2d Cir.1945). This rule is most clearly applicable where the offense involved a conspiracy and at least one overt act of the conspiracy occurred within the United States. *Melia v. United States, supra,* 667 F.2d at 304; *United States v. Perez-Herrera,* 610 F.2d 289, 290–91 (5th Cir.1980).

■ It would be strange, indeed, if the United States could punish a foreign corporation for violating its criminal laws upon a theory that the corporation was constructively present in the country at the time the violation occurred, *see Hyde v. United States,* 225 U.S. 347, 362, 32 S.Ct. 793, 800, 56 L.Ed. 1114 (1912), but a federal grand jury could not investigate to ascertain the probability that a crime had taken place. *See Montship Lines, Ltd. v. Federal Mari-*

time Board, 295 F.2d 147, 154 (D.C.Cir. 1961). The grand jury is an appendage or agency of the court. *Brown v. United States,* 359 U.S. 41, 49, 79 S.Ct. 539, 545, 3 L.Ed.2d 609 (1959); *United States v. Stevens,* 510 F.2d 1101, 1106 (5th Cir.1975). It may investigate any crime that is within the jurisdiction of the court. 1 Orfield, *Criminal Procedure Under the Federal Rules* § 6:39, at 403 (1966). Its duty to inquire cannot be limited to conduct occurring in the district in which it sits. *United States v. Antill,* 601 F.2d 1049, 1050–51 (9th Cir.1979); *United States v. Girgenti,* 197 F.2d 218, 219 (3d Cir.1952); *see Masinia v. United States,* 296 F.2d 871, 875 (8th Cir. 1961); *United States v. Neff,* 212 F.2d 297, 301–02 (3d Cir.1954).

■ In performing its duty of inquiry, the grand jury must have the right to summon witnesses and to require the production of documentary evidence. "[T]he grand jury's authority to subpoena witnesses is not only historic, . . . but essential to its task." *Branzburg v. Hayes, supra,* 408 U.S. at 688, 92 S.Ct. at 2660. So long as the court which must enforce the grand jury process can obtain personal jurisdiction of the summoned witness, the witness may not resist the summons on the sole ground that he is a non-resident alien. *United States v. Field,* 532 F.2d 404, 407–10 (5th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Germann,* 370 F.2d 1019, 1022–23 (2d Cir.), *vacated on other grounds,* 389 U.S. 329, 88 S.Ct. 503, 19 L.Ed.2d 559 (1967). Neither may the witness resist the production of documents on the ground that the documents are located abroad. *United States v. First National City Bank,* 396 F.2d 897, 900–01 (2d Cir.1968); *Federal Maritime Commission v. DeSmedt,* 366 F.2d 464, 468–69 (2d Cir.), *cert. denied,* 385 U.S. 974, 87 S.Ct. 513, 17 L.Ed.2d 437 (1966). The test for the production of documents is control, not location. *In re Canadian Int'l Paper Co.,* 72 F.Supp. 1013, 1020 (S.D.N.Y.1947).

■ The question, then, in the instant case is whether the district court had such personal jurisdiction over appellant that it could enforce obedience to the grand jury subpoena. We agree with counsel for both sides that Judge Sand should not have looked to New York State's long-arm statutes in answering this question. *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287, 290 (D.Conn.1975); 18A *Fletcher Cyc. Corp.* § 8798, at 315 (1977). The subject of the grand jury's investigation is the possible violation of federal revenue statutes, and its right to inquire of appellant depends upon appellant's contacts with the entire United States, not simply the state of New York. *Cryomedics, Inc. v. Spembly, Ltd., supra,* 397 F.Supp. at 290. Nonetheless, we are satisfied that the district judge arrived at the correct result.

■ With *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) as our lodestar, we have subscribed to the "modern notion" that where a person has sufficiently caused adverse consequences within a state, he may be subjected to its judicial jurisdiction so long as he is given adequate notice and an opportunity to be heard. *See Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972). Section 50 of the American Law Institute's Restatement (Second) of Conflict of Laws (1971), similarly provides:

> A state has power to exercise judicial jurisdiction over a foreign corporation which causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of these effects and of the corporation's relationship to the state makes the exercise of such jurisdiction unreasonable.

While this principle must be applied with caution in matters which have international complications, *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 1000 (2d Cir.), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), we think it clearly applicable in the instant case. That the United States is injuriously affected by the wrongful evasion of its revenue laws is beyond dispute. Under such circumstances, it well may be that the occurrence of the offense itself is

sufficient to support a claim of jurisdiction, provided adequate notice and an opportunity to be heard has been given. *See* Comment, *Criminal Jurisdiction Over Foreign Corporations: The Application of a Minimum Contacts Theory,* 17 San Diego L.Rev. 429, 448 (1980); Lenhoff, *International Law and Rules on International Jurisdiction,* 50 Cornell L.Q. 5, 12 (1964). However, appellant's contacts with the United States were not limited to appellant's alleged extraterritorial violation of United States revenue laws.

If appellant did violate the United States tax laws, a question whose answer must await the possible return of an indictment, that violation occurred in cooperation with appellant's wholly-owned subsidiary, Marc Rich & Co. International, Ltd., which is authorized to do business in New York State and does so. Moreover, two of the five members of appellant's board of directors, who are also on the board of Marc Rich & Co. International, are residents of the United States. At least one of these directors is alleged to have been directly involved in the scheme to divert the taxable income of International. If, in fact, there was a conspiracy among all of these parties to evade the tax laws, both the conspiracy and at least some of the conspiratorial acts occurred in the United States. *See Melia v. United States, supra,* 667 F.2d at 303–04. Under such circumstances, service of a subpoena upon appellant's officers within the territorial boundaries of the United States would be sufficient to warrant judicial enforcement of the grand jury's subpoena.[1] *FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson,* 636 F.2d 1300, 1324 (D.C.Cir.1980); *In re Electric & Musical Industries, Ltd.,* 155 F.Supp. 892 (S.D.N.Y.), *appeal dismissed,* 249 F.2d 308 (2d Cir.1957); *In re Canadian Int'l Paper Co., supra,* 72 F.Supp. at 1019–20; Fed.R.Civ.P. 4(d)(3); Fed.R.Crim.P. 17(e)(1).

We find no merit in appellant's argument that ratification of the service upon it of the subpoena would be tantamount to cre-ating a novel federal long-arm rule without congressional authorization. That argument, as we understand it, proceeds as follows:

1. Fed.R.Crim.P. 17(e)(2) provides that a "subpoena directed to a witness in a foreign country shall issue under the circumstances and in the manner and be served as provided in Title 28, U.S.C., § 1783."

2. Section 1783 provides for service upon a "national or resident of the United States who is in a foreign country" for the "production of a specified document or other thing by him."

3. Since section 1783 is silent concerning foreign corporations which are not nationals or residents of the United States, those corporations are not subject to subpoena, regardless of the place and manner of service.

In making this contention, appellant ignores the fact that the subpoena in the instant case was not served in a foreign country and that, ever since the enactment of the first all-writs statute as part of the Judiciary Act of 1789, 1 Stat. 73, 81–82, judicial authority to issue subpoenas has had congressional approval. From almost the birth of our nation, Congress has recognized that the "right to resort to means competent to compel the production of written, as well as oral, testimony, seems essential to the very existence and constitution of a court of common law." *American Lithographic Co. v. Werckmeister,* 221 U.S. 603, 609, 31 S.Ct. 676, 678, 55 L.Ed. 873 (1911) (quoting *Amey v. Long,* 9 East 473, 484, 103 Eng.Rep. 653, 658 (1808)). *See also Harris v. Nelson,* 394 U.S. 286, 299–300, 89 S.Ct. 1082, 1090–1091, 22 L.Ed.2d 281 (1969); *Barry v. United States ex rel. Cunningham,* 279 U.S. 597, 613–616, 49 S.Ct. 452, 455–456, 73 L.Ed. 867 (1929). Indeed, this Court has found it unnecessary to look to the all-writs statute, now 28 U.S.C. § 1651, in fashioning a method of serving process where none was specifically provided by statute. In *Petrol Shipping Corp. v. Kingdom of Greece,* 360 F.2d 103, 108 (2d

---

1. The subpoena was accepted by International's attorney, and the manner of service, as distinguished from jurisdiction, is not challenged.

Cir.), *cert. denied,* 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966), we relied upon Fed. R.Civ.P. 83 which provides in part that "[i]n all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."

■ Briefly summarized, appellant's argument puts the cart before the horse. A federal court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction. *United States v. Germann, supra,* 370 F.2d at 1022–23; *In re Shipping Industry,* 186 F.Supp. 298, 317–18 (D.D.C. 1960).

The crucial issue on this appeal is how much of a jurisdictional showing the Government had to make in order to warrant the issuance of the subpoena directed to appellant. Appellant contends that the district court committed reversible error in holding that, although the Government had to show in the first instance that it had a good faith basis for asserting jurisdiction, once it did so, the burden of proving lack of jurisdiction shifted to appellant. We agree with appellant's argument concerning burden of proof but disagree with appellant's contention that reversal is required. Based upon our own review of the affidavits submitted in the district court, *see Diversified Mortgage Investors v. U.S. Life Title Ins. Co.,* 544 F.2d 571, 577 (2d Cir.1976), we are satisfied that the Government made a sufficient showing of personal jurisdiction to justify the district court's order.[2]

In the seminal case of *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), Justice Pitney, writing for the Court, said that grand jury witnesses "are not entitled to take exception to the jurisdiction of the grand jury or the court over the particular subject-matter that is under investigation." *Id.* at 282, 39 S.Ct. at 471. He continued, "At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to deter-

mine the question whether the facts show a case within their jurisdiction." *Id.* at 282–83, 39 S.Ct. at 471.

Although Justice Pitney was discussing subject matter rather than personal jurisdiction, the same reasoning may be applied in cases such as the instant one, where the appellant is not challenging enforcement of the grand jury subpoena on the due process grounds of notice and an opportunity to be heard, *see Blackmer v. United States,* 284 U.S. 421, 440, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932). Requiring the Government to prove by a preponderance of evidence the facts upon which it bases its claim of personal jurisdiction "might well invert the grand jury function, requiring that body to furnish answers to its questions before it could ask them." *In re Harrisburg Grand Jury 79–1,* 658 F.2d 211, 214 (3d Cir.1981). "[A] sufficient basis for an indictment may only emerge at the end of the investigation when all the evidence has been received." *United States v. Dionisio,* 410 U.S. 1, 15–16, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973); *see United States v. Bisceglia,* 420 U.S. 141, 150, 95 S.Ct. 915, 920, 43 L.Ed.2d 88 (1975); *Associated Container Transportation (Australia) Ltd. v. United States,* 705 F.2d 53 at 60–61 (2d Cir.1983).

As already pointed out, a grand jury is not limited in its investigation to criminal acts occurring in the district in which it sits. In *United States v. Girgenti, supra,* 197 F.2d 218, the witness challenged the right of a grand jury sitting in the Eastern District of Pennsylvania to summon and examine him concerning events which took place in New Jersey. In dismissing this contention, the court said:

There is not the slightest doubt that if people conspire in New Jersey to ... conceal tax liability ... in the Eastern District of Pennsylvania, the grand jury in the latter district may inquire into it. To appellant's argument that this grand jury had not found anything about affairs in New Jersey that affected matters

---

**2.** At oral argument to the district court, both sides disclaimed need for an evidentiary hear-

ing.

in the Eastern District of Pennsylvania, we answer that the grand jury had not then and has not now completed its investigation. What it will eventually find, no one, not even appellant's counsel, knows. *Id.* at 219.

■ Attendance and response to a subpoena is a public duty, a duty "not to be grudged or evaded." *Hurtado v. United States,* 410 U.S. 578, 589 n. 10, 93 S.Ct. 1157, 1164 n. 10, 35 L.Ed.2d 508 (1973) (quoting 8 Wigmore, *Evidence* § 2192, at 72 (McNaughton rev. 1961)). "Whoever is impelled to evade or to resent it should retire from the society of organized and civilized communities and become a hermit." *Id.* When the defendant in a civil case challenges the grant of a temporary injunction on the ground that the court is without personal jurisdiction, the plaintiff is required to establish only a reasonable probability of ultimate success on this issue. *Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 59 (2d Cir.1981). The remedy for violation of the district court's order in such a case ordinarily is the same as here, *i.e.,* civil contempt. *Shillitani v. United States,* 384 U.S. 364, 368 (1966). "A subpoena is served in the same manner as other legal process; it involves no stigma whatever; if the time for appearance is inconvenient, this can generally be altered; and it remains at all times under the control and supervision of a court." *United States v. Doe,* 457 F.2d 895, 898 (2d Cir.1972), *cert. denied,* 410 U.S. 941, 93 S.Ct. 1376, 35 L.Ed.2d 608 (1973). In view of the civilized world's abiding concern for the disclosure of truth and the proper administration of justice, *see United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950), we conclude that, in a case such as this, if the Government shows that there is a reasonable probability that ultimately it will succeed in establishing the facts necessary for the exercise of jurisdiction, compliance with the grand jury's subpoena may be directed.

■ Such a showing has been made in the instant case. For example, affidavits submitted by the Government disclose that, in 1980, approximately 40% of International's crude oil purchases, worth $345 million, were from appellant. International then realized a gross loss of over $110 million in selling to its domestic customers. There is sufficient likelihood that unlawful tax manipulation was taking place between appellant and its wholly-owned subsidiary to make it "reasonable and just, according to our traditional conception of fair play and substantial justice" to require appellant to respond to the grand jury's inquiries. *See International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

■ Appellant's remaining contentions require no extended discussion. Although in camera submissions of affidavits are not to be routinely accepted, an exception to this general rule may be made where an "ongoing interest in grand jury secrecy" is at stake. *In re John Doe Corp.,* 675 F.2d 482, 489–91 (2d Cir.1982). The imposition of a coercive fine was not improper, *In re Grand Jury Impaneled January 21, 1975,* 529 F.2d 543, 550–51 (3d Cir.), *cert. denied,* 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976), and will be reversed only for abuse of discretion, *United States v. Flores,* 628 F.2d 521, 527 (9th Cir.1980). In view of appellant's conceded size and the total monetary value of the transactions taking place between appellant and its wholly-owned subsidiary, the coercive fine of $50,000 per day did not constitute an abuse of the district court's discretion. Appellant may avoid any liability by promptly complying with the subpoena. We will direct that the mandate issue one week from the date of this opinion in order to permit appellant to make the necessary arrangements for compliance.

Affirmed.