Will STONE, Henry Washington, Albert Matias, Freddy Tooks and Jo Ann Starks, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, Michael Hennessey, Sheriff, City and County of San Francisco; Mayor of the City and County of San Francisco; Board of Supervisors of the City and County of San Francisco; Department of Public Health of the City and County of San Francisco, Defendants.

No. C–78–2774 WHO.

United States District Court, N.D. California.

Jan. 19, 1993.

John N. Hauser, Beth H. Parker, Carolyn L. Reid, McCutchen, Doyle, Brown & Enersen, Morton P. Cohen, San Francisco, CA, for plaintiffs.

Louise H. Renne, City Atty., Dennis Aftergut, Chief Asst. City Atty., San Francisco, CA, for defendants.

## OPINION AND ORDER

ORRICK, Senior District Judge.

Whether contempt fines assessed against

defendants [1] by the Special Master, pursuant to this Court's Memorandum Opinion and Order of December 17, 1991 (December 17 Order), accrued while the Ninth Circuit's stay of that Order was in effect from January 1, 1992, to August 31, 1992, is the question before the Court. The question is one of first impression and, thus, the Court writes upon a clean slate because the parties contend and the Court has found that there is no authority bearing on the question other than a few cases where the courts have assumed, without deciding, that contempt fines do not accrue during the period that an underlying contempt order is stayed. For the reasons discussed below, the Court holds that the contempt fines did not accrue while the Ninth Circuit's stay was in effect, and, accordingly, orders the Special Master to remit to defendants those fines assessed and collected for the period of the stay.

## I.

The facts that preceded this Court's contempt finding are summarized in the Ninth Circuit's opinion affirming both the finding of contempt and the assessment of the fines. *See Stone v. City & County of San Francisco*, 968 F.2d 850, 852–53 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993). The facts relevant to the instant controversy are as follows.

In 1978, plaintiffs, who were pretrial detainees in the San Francisco County Jail located on the sixth floor of the Hall of Justice ("Jail No. 1"), brought this class action against defendants to remedy allegedly unconstitutional safety and health conditions in Jail No. 1, created in part by overcrowding. On July 15, 1982, the parties entered into a Consent Decree ("Decree"), which has been supplemented by various orders of this Court. Of particular relevance here is Paragraph XIV of the Decree, which provides that "[e]xcepting weekends and holidays, in no event shall any housing areas, including dormitories,

regularly house more than their rated capacity, as set forth by the California Board of Corrections' Living Area Space Evaluation. . . ."

In June 1985, plaintiffs moved to hold defendants in contempt for violating several provisions of the Decree, including the provision dealing with the mandated population levels. As a result of that motion, in May 1986 the Court ordered defendants to comply with the Decree, appointed a Special Master, and ordered the Special Master to investigate, report, and recommend actions for defendants to take in order to insure compliance with the Decree. *See* Stipulation and Order filed May 2, 1986.

Over the course of the following five and one-half years, defendants came into, and fell out of, compliance with the population levels several times. On November 28, 1987, the Court issued an Order to Show Cause why defendants should not be held in contempt; the Court repeatedly continued hearings on the pending motion for contempt to allow defendants the opportunity to meet the population levels. *See Stone*, 968 F.2d at 853. Defendants did remain in compliance for a period of almost two years. After February 19, 1991, however, the population levels were exceeded on numerous occasions. On May 30, 1991, plaintiffs again moved for an order (1) holding defendants in contempt, (2) awarding sanctions, and (3) ordering compliance with the Decree.

Plaintiffs' renewed contempt motion came before the Court on November 7, 1991. Defendants did not deny the overcrowding in Jail No. 1, but did request additional time to implement a plan to reduce the overcrowding. The Court took the matter under submission and subsequently issued the December 17 Order. The Court found that plaintiffs had "shown by clear and convincing evidence that a specific and definite order of this Court ha[d] been violated[,]" December 17 Order at 12:23–25, and that "[d]efendants ha[d]

---

**1.** Defendants are the City and County of San Francisco, Michael Hennessey, Sheriff of the City and County of San Francisco, the Mayor of the City and County of San Francisco, the Board

of Supervisors of the City and County of San Francisco, and the Department of Public Health of the City and County of San Francisco.

not performed all reasonable steps to insure compliance with the Decree and subsequent Court Orders." *Id.* at 12:28–13:1. Pursuant to its inherent powers and the powers granted it under 18 U.S.C. § 401(3), the Court determined that it had the authority to "impose sanctions, as a corollary to a finding of contempt, to coerce defendants into compliance with the Decree and subsequent Court Orders, and to compensate plaintiffs for the losses they ha[d] sustained." *Id.* at 13:6–9.

Based upon its findings of fact and conclusions of law, the Court held defendants in contempt, and ordered sanctions paid "in the amount of $300 per day per person for each day after January 1, 1992, in which defendants violated this Court's Orders by" exceeding the population levels in Jail No. 1. *Id.* at 15:28–16:6. The December 17 Order provided the following mechanism for the assessment and collection of fines. Commencing on February 1, 1992, and on the first day of each month thereafter, the Special Master was to send defendants a statement summarizing the fines to be levied for any violations that occurred during the preceding month. Within ten days of their receipt of each statement, defendants were to deposit the fine levied into an escrow account to be established by the Special Master. Each side was to have the right to object to the Special Master's statement of fines, although any such objection would not relieve defendants of the obligation to pay the sum specified in the disputed statement. If the Court determined that an objection had merit, a future order would provide for the appropriate adjustment. *Id.* at 16:11–17:9.

In addition, the December 17 Order provided that the fines were to be made available to the City and County of San Francisco "for programs that will have a direct bearing on the population levels of the jail system." *Id.* at 16:26–17:1.[2] The Court ordered this remedial provision pursuant to the general rule that contempt fines may be used to remedy the problem that underlies the contempt citation. *See Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); *see also Palmigiano v. DiPrete,* 710 F.Supp. 875, 887–88 (D.R.I.) (contempt sanctions collected in prison overcrowding cases may be used for programs to reduce the overcrowding), *aff'd,* 887 F.2d 258 (1st Cir.1989).

Defendants immediately filed a notice of appeal. Faced with the prospect of incurring the heavy fines provided for in the December 17 Order, defendants sought a stay of that Order. Following the dictate of Rule 8(a) of the Federal Rules of Appellate Procedure, defendants initially brought their stay request to this Court; on December 30, 1991, this Court denied defendants' motion for a stay. One day later, on December 31, 1991, the Ninth Circuit entered a stay of the December 17 Order. By order dated January 8, 1992, the Ninth Circuit extended the stay until such time as that court resolved defendants' appeal.

The court of appeals expedited its consideration of the case and, on June 25, 1992, filed an opinion that affirmed this Court's finding of contempt and order for the imposition of fines.[3] *See Stone,* 968 F.2d at 865. Defendants filed a petition for rehearing and suggestion for rehearing *en banc;* by order dated August 25, 1992, the Ninth Circuit denied both requests. *Id.* The Ninth Circuit's mandate issued seven days later, on September 1, 1992. *See* Fed. R.App.P. 41(a). On that date, the stay dissolved.

On October 7, 1992, the Special Master sent defendants his first notice regarding accumulated fines. The Special Master determined that (1) contempt fines against defendants commenced on January 1, 1992, and (2) the accrued fines for the period January 1, 1992, through August 31, 1992,

---

**2.** Thus, the Special Master is authorized to release fines he has collected to the City and County of San Francisco, but only in the event that the City augments existing programs, or implements new ones, to reduce overcrowding in Jail No. 1.

**3.** The Ninth Circuit vacated that portion of the December 17 Order that allowed Sheriff Hennessey to override applicable state law in conducting early release or placing prisoners in alternative programs. *Stone,* 968 F.2d at 865.

totaled $2,792,100. On October 15, 1992, defendants appeared before this Court and objected to the Special Master's assessment of fines for the eight-month period during which the stay was in effect. Plaintiffs also appeared before the Court and argued that the stay blocked only the payment, and not the accrual, of the contempt fines. Pursuant to the terms of the December 17 Order, the Court ordered that defendants deposit the assessed fines into the escrow account, which the Special Master had established prior to the October 15 hearing, pending this Court's ruling on defendants' objection.

## II.

■ The narrow question before the Court is: when a party appeals a contempt order that imposes coercive fines and obtains a stay of that order, is that party subject to those fines while the stay remains in effect? Defendants insist that this question must be answered in the negative, that they were not in contempt of court during the pendency of their appeal, and that they incurred no fines during that time period. Plaintiffs contend that despite the stay, defendants were in contempt during that period, and that the stay blocked only the immediate payment, not the accrual, of fines for the period of January 1, 1992, through August 31, 1992.

## A.

The starting point is with the Ninth Circuit's opinion, because it contains language that, at first blush, appears to bear on the present issue. Before considering the merits of defendants' appeal, the Ninth Circuit resolved the question of its own jurisdiction over the case. Plaintiffs (appellees in the Ninth Circuit) had argued that the fines

called for in the December 17 Order were speculative, and hence that the Order was not "final" within the meaning of 28 U.S.C. § 1291. A finding by the Ninth Circuit that the December 17 Order was not "final" would, of course, have necessitated a holding that the appellate court lacked jurisdiction under § 1291. The Ninth Circuit rejected plaintiffs' argument, and its discussion with reference to this point contains language relevant to the issue whether the stay blocked the accrual of the fines.

The court squarely held that "[a] post-judgment order imposing sanctions acquires the 'operativeness and consequence' required · for finality under § 1291." *Stone*, 968 F.2d at 854 (citing *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir.1983)). Because the December 17 Order was "a post-judgment order imposing sanctions," the Order was "final" for purposes of § 1291, and the Ninth Circuit had jurisdiction over the case.[4]

In reaching this conclusion, the Ninth Circuit distinguished the December 17 Order from other contempt orders that a number of appellate courts, including the Ninth Circuit, had found lacking in terms of finality. In a footnote, the court made the following observations:

When a contempt order threatens to impose sanctions to coerce compliance but the sanctions never actually are imposed because the party appeals before the sanctions accrue, the order is not final. *See Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 399 (5th Cir. 1987); *see also Donovan v. Mazzola* ..., 761 F.2d 1411, 1416–17 (9th Cir.1985). This rule is inapplicable here because the fines would have begun accruing on January 1, 1992. The only reason the fines

4. Appellate courts generally have jurisdiction only to consider appeals from final orders of the district courts. *See* 28 U.S.C. § 1291. A contempt order against a party to a pending proceeding is, as a general rule, not considered a final order under § 1291. *Stone*, 968 F.2d at 854 (citing *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 651 (9th Cir.1981); *Hughes v. Sharp*, 476 F.2d 975 (9th Cir.1973)).
As the Ninth Circuit observed, however, "[w]here the contempt order is a *post-judgment*

order imposing *sanctions* ... the order may be final for the purposes of § 1291." *Id.* (citing *Weyerhaeuser Co. v. International Longshoremen's & Warehousemen's Union, Local 21*, 733 F.2d 645 (9th Cir.1984)). Because a consent decree is considered a final judgment, and because the parties to this case had agreed to the Decree in 1982, the Ninth Circuit found that the December 17 Order was a post-judgment order, which was a final order pursuant to § 1291. *Id.*

have not been levied is this court's temporary stay.

*Id.* at 854 n. 4. In this Court, plaintiffs argue that this footnote implies a resolution in their favor of the accrual issue. They point to the first sentence in this footnote and reason that unless the fines actually were "imposed" (and were accruing during the pendency of the appeal), the "sanctions" (i.e., the fines) would merely have been "threatened" and the contempt order would have lacked the requisite "operativeness and consequence." Plaintiffs' argument is flawed, however, because it fails to recognize the place of this footnote in the Ninth Circuit's discussion.

The footnote came at the end of the sentence in which the Ninth Circuit held that a post-judgment order imposing sanctions, such as the December 17 Order, was "final" within the meaning of § 1291. The first sentence of the footnote describes a situation in which a court order provides for the *possible* imposition of sanctions, but does not actually impose the "threatened" sanctions. If the party appeals the district court's order, the portion of that order that threatens (but does not impose) sanctions is not final.[5]

The second sentence of the footnote *distinguishes the December 17 Order* from the contempt orders described in the first sentence. In that sentence, the Ninth Circuit finds that the December 17 Order (as well as the sanctions imposed under it) was "operative" and "final" on January 1, 1992, the day the fines were to "have begun accruing." Thus, the distinction underscored by the footnote and its accompanying text is between a sanction that does not

materialize because of a *party's* action (pursuing an appeal *before* sanctions are imposed) and a sanction that fails to materialize because of a *court's* action (staying the fines). Not only does this footnote fail to support plaintiffs' argument, it appears to undercut it, for the second sentence provides that the rule stated in the first sentence "is inapplicable here because *the fines would have begun accruing on January 1, 1992.*" *Id.* (emphasis added).

Indeed, the "would have begun accruing" language would appear to be dispositive of the question presently before this Court were it not for the Ninth Circuit's choice of words in the *third* sentence of the footnote. There, the Ninth Circuit states that "[t]he only reason the fines have not been *levied* is this court's temporary stay." *Id.* (emphasis added). "Levy" is defined as follows: "to impose or collect (as a tax or tribute) by legal process or by authority." *Webster's Third New International Dictionary* 1301 (1971). The third sentence conceivably could be construed to support plaintiffs' argument, which is that the stay blocked only the *collection* of the fines.

Any attempt to distinguish between the Ninth Circuit's use of the verbs "accrue" and "levy" for purposes of resolving the question of the stay's effect is doomed to be an exercise in futility. That such words, imbedded within a footnote dealing with a point of tangential relevance to the instant issue, might support either side's position is hardly surprising. The simple fact is that the Ninth Circuit did not consider the precise question whether the stay relieved defendants of their obligation to comply altogether with the December 17 Order.[6]

---

5. *Thus, in the cited Petroleos Mexicanos case,* the Fifth Circuit dismissed an appeal of a criminal contempt order because the district court had yet to impose a sanction for that contempt prior to the contemnor's appeal. 826 F.2d at 399. The district court in that case had also made a finding of civil contempt, for which the court imposed a fine of $79,431.25; because the *civil* contempt order was accompanied by "a concomitant sanction," the Fifth Circuit *did* have jurisdiction over the appeal of that order. *Id.*
Likewise, in the *Donovan* case, also cited by the Ninth Circuit, the Ninth Circuit determined that a pair of contempt orders lacked finality be-

cause they did not include an imposition of sanctions. 761 F.2d at 1416–17.

6. Other language in the opinion is similarly inconclusive on this point. In the course of holding that the fines were not "speculative," the Ninth Circuit observed that defendants "ha[d] not been required to pay sanctions because of this court's stay of the district court's order. The record demonstrates that the City is not in compliance with the population limits and thus *would be required to pay the fines if the stay were not in effect.*" *Stone,* 968 F.2d at 854–55 (emphasis added) (footnote omitted). The most natural reading of the highlighted language

This Court now turns to that difficult question.

### B.

This Court's research of this issue has turned up several cases that have discussed the effect upon a contempt order of a stay pending appeal, although none has confronted the issue head on. The *dicta* from all of those cases, however, point in the same direction: contempt fines do *not* accrue so long as a stay pending appeal remains in effect.

Thus, in the context of discussing the courses of action available to an individual fined for his failure to produce certain documents pursuant to a subpoena *duces tecum*, the Eleventh Circuit observed that the contemnor "could have persisted in his refusal to surrender the subpoenaed docu-

ments and exercised his right to appeal his continued contumacy. Under such circumstances, however, *the coercive sanctions chosen by the district court would have continued to accrue (unless stayed)." In re Grand Jury Subpoena Duces Tecum,* 955 F.2d 670, 673 (11th Cir.1992) (emphasis added). The implication of this statement is that if the court of appeals (or the district court) *had* stayed the coercive fines, they would *not* have accrued during the pendency of the appeal. Several other cases contain language that is similar to that of the Eleventh Circuit.[7]

Also relevant are the contempt fines and concomitant stays issued in the Yonkers housing desegregation case. *See United States v. City of Yonkers,* 856 F.2d 444 (2d Cir.1988), *rev'd sub nom. Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990). In that case, Judge

---

would appear to support defendants' argument; that is, the Ninth Circuit appeared to state that the stay relieved defendants of their obligation to pay fines for any violations that might have occurred during the pendency of the appeal. That same language, however, possibly could be *stretched to support plaintiffs' position,* which is that the Ninth Circuit stayed only the payment of the fines, not their accrual.

**7.** *See Crystal Palace Gambling Hall, Inc. v. Mark Twain Indus., Inc. (In re Crystal Palace Gambling Hall, Inc.),* 817 F.2d 1361, 1365 (9th Cir. 1987) *(per curiam )* (upholding district court's imposition of contempt fines where contemnors had disobeyed clear and direct court order; contemnors had no justification for disobeying the order, and to the extent they believed the district court's order was invalid, "their remedy was to appeal and request a stay pending the appeal") (citing *Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 590–91, 42 L.Ed.2d 574 (1975)); *New York v. Shore Realty Corp.,* 763 F.2d 49, 51 (2d Cir.1985) (observing that defendants' failure to comply with appellate court's requirements for stay pending appeal exposed defendants to full liability for daily fines imposed under district court's contempt order); *McLean v. Central States, S.E. & S.W. Areas Pension Fund,* 762 F.2d 1204, 1210 (4th Cir.1985) (noting that if party believes district court's civil contempt order invalid, its proper remedy is to seek a stay pending appeal; otherwise, that party is liable for contempt sanctions unless the order is overturned on appeal); *United States v. Campbell (In re Campbell),* 761 F.2d 1181, 1186 (6th Cir.1985) ("Unless a party challenging a contempt order obtains a stay of judgment or posts a supersedeas bond, the judgment may be executed notwithstanding the fact that it has

been appealed."); *cf. Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964) (I.R.C. § 7604, which governs enforcement of I.R.S. summonses, permits a witness to test the validity of a summons without injury if the contempt order has been stayed).

To a similar effect is a line of cases from the Second Circuit dealing with Judge Sand's contempt order against Marc Rich & Co. *See Marc Rich & Co., A.G. v. United States (In re Marc Rich & Co., A.G.),* 739 F.2d 834 (2d Cir.1984); *Marc Rich & Co., A.G. v. United States (In re Marc Rich & Co., A.G.),* 736 F.2d 864 (2d Cir. 1984); *Marc Rich & Co., A.G. v. United States (In re Grand Jury Subpoena Duces Tecum),* 731 F.2d 1032 (2d Cir.1984); *Marc Rich & Co., A.G. v. United States (In re Marc Rich & Co., A.G.),* 707 F.2d 663 (2d Cir.), *cert. denied,* 463 U.S. 1215, 103 S.Ct. 3555, 77 L.Ed.2d 1400 (1983). Pursuant to 28 U.S.C. § 1826, Judge Sand imposed civil contempt sanctions against Marc Rich & Co. for failing to comply with the court's order directing it to produce certain records pursuant to a grand jury subpoena *duces tecum;* as part of the original contempt order, Judge Sand stayed the imposition of the coercive fines until the appellate process was complete. The *Marc Rich* cases are not entirely on point, however, because (a) the original contempt order expressly stayed the imposition of fines until the court of appeals issued its mandate, and (b) Judge Sand imposed the contempt fines pursuant to 28 U.S.C. § 1826, which, unlike 18 U.S.C. § 401 (pursuant to which this Court found defendants in contempt and imposed fines), includes a maximum time period of eighteen months during which the district court can impose civil contempt sanctions. *Marc Rich & Co., A.G.,* 739 F.2d at 835 n. 1.

Sand imposed contempt fines against both the City of Yonkers and the members of its city council to coerce compliance with a consent decree; under the terms of that decree, the City had agreed to enact an affordable housing ordinance, but the council repeatedly voted down such an ordinance. The fines imposed were steep: each council member was to be fined $500 per day if they did not vote in favor of the ordinance, and was to be imprisoned if their refusal to vote affirmatively lasted longer than ten days; fines against the City were to start at $100 on day one, and to double in amount on each day of its continued noncompliance. *Id.* at 450.

The Second Circuit stayed the imposition of the fines on day seven. *Id.* at 452. Although the court of appeals affirmed Judge Sand's order with one modification (the court set a ceiling of $1 million per day on the fines against the City), the part of that court's decision relevant to the issue at hand concerns the dissolution of the stay. The court ruled that on the day its stay dissolved, the contempt fines would resume *at the level specified for the eighth day;* thus, the individual members of the city council would have an additional two days to vote in favor of the ordinance or face imprisonment, and the fines against the City would resume at the level specified for day eight (i.e., $12,800).[8] *Id.* at 460. Here again, the implication of the Second Circuit's order is that contempt fines do not accrue so long as a stay remains in effect. Had the fines accrued during the pendency of the appeal, the fines against the City would have reached the $1 million cap by the time the court of appeals issued its mandate.

As noted above, none of the cited cases expressly decided the issue whether contempt fines accrue while a stay pending appeal remains in effect. Based upon its own review of the applicable law, the Court determines that, at least with respect to the type of civil contempt order at issue here, contempt fines do not accrue during the pendency of the stay and appeal. The Court reaches this conclusion because it determines that a party subject to a coercive civil contempt order stands in the same position as a party subject to an injunctive decree: in the absence of any other court order, the stay pending appeal temporarily relieves that party of its obligation to conform its conduct to the court's commands.

 A stay has a different effect depending upon whether it is issued in a case involving money damages or a case involving injunctive relief. There are similarities between the two types of cases in terms of the effect of the losing party's *failure* to obtain a stay. In a case in which a judgment awards money damages, the prevailing party is entitled to execute upon its judgment, unless that judgment is stayed. *Hovey v. McDonald,* 109 U.S. 150, 157, 3 S.Ct. 136, 140, 27 L.Ed. 888 (1883); 9 James W. Moore et al., *Moore's Federal Practice* ¶ 208.03 (2d ed. 1992); *see also National Serv. Indus. v. Vafla Corp.,* 694 F.2d 246, 250 (11th Cir.1982). Likewise, where the court's judgment awards injunctive relief, the injunction is effective, and consequently must be obeyed, unless it is stayed. *Hovey,* 109 U.S. at 161, 3 S.Ct. at 143; Moore et al., *supra,* ¶ 208.03.

 Distinctions do exist, however, with respect to the protection afforded the prevailing party in the event that the court's judgment *is* stayed as well as the losing party's obligations while the stay remains in effect. Where the prevailing party has been awarded money damages, the losing party is entitled to stay that judgment upon the posting of a supersedeas bond. *See* Fed.R.Civ.P. 62(d). The amount of the bond is generally calculated to secure both

---

**8.** The court of appeals stayed the issuance of its mandate, and the dissolution of the stay, for seven days from the date of its opinion, so as to allow the defendants an opportunity to seek a stay from the Supreme Court. 856 F.2d at 460. Six days later, the Supreme Court granted stays to the council members pending the filing and disposition of timely *certiorari* petitions; the

Court denied the City's request for a similar stay. *Spallone v. United States,* 487 U.S. 1251, 109 S.Ct. 14, 101 L.Ed.2d 964 (1988). Subsequently, the Supreme Court granted *certiorari* and reversed the imposition of contempt fines against the members of the city council. *Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990).

the judgment and the costs of delay incurred by the prevailing party because of its inability to execute upon its judgment. *See, e.g., Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1191 (5th Cir.1979). The prevailing party in a case for money damages also receives the protection of 28 U.S.C. § 1961, which provides that interest on the money judgment runs from the date that the judgment is entered. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). The stay preserves the status quo, which, in a case involving a money judgment, is that the prevailing party has a fixed claim for damages. Although the stay forestalls the prevailing party's ability to execute upon that judgment, it does not relieve the losing party of its obligation to compensate the prevailing party for the costs of its delay in the event the appeal is unsuccessful.

■ In contrast, there is no requirement that a party appealing a grant of injunctive relief post a supersedeas bond in order to obtain a stay. Indeed, Rule 62(d) specifically exempts actions for injunctive relief from the class of cases in which a supersedeas bond will stay execution of the district court's judgment.[9] A district court has the power to preserve the status quo pending appeal in an injunction case, by "suspend[ing], modify[ing], restor[ing], or grant[ing] an injunction during the pendency of the appeal." Fed.R.Civ.P. 62(c). If the order appealed from has granted an injunction, then the Rule 62(c) injunction constitutes a second injunction, which dissolves when the appellate court rules on the underlying injunction. *See Klaus v. Hi-Shear Corp.,* 528 F.2d 225, 235 (9th

Cir.1975). But the court exercises that power pursuant to Rule 62(c), which authorizes, but does not require, the posting of a bond "for the security of the rights of the adverse party." *See generally* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2905. It follows that if a district court declines to preserve the status quo by entering a Rule 62(c) injunction, then a stay pending appeal relieves the party enjoined by the underlying order from conforming its conduct to the terms of the district court's injunctive decree. *See* Moore et al., *supra,* ¶ 208.03.

While the rules are clear with respect to the effect of a stay upon these two types of judgments, there is no clear rule with respect to the effect of a stay upon a civil contempt order that imposes fines. The question for the Court, therefore, is whether a civil contempt order, of the type involved here, is closer to a judgment awarding money damages or a judgment awarding injunctive relief. The Court finds that its contempt order is more akin to judgments in the latter category, and that the Ninth Circuit's stay pending appeal temporarily relieved defendants of their obligation to conform their conduct to the terms prescribed in the December 17 Order, or to incur the sanctions imposed thereunder as the cost of noncompliance.

The December 17 Order imposed fines against defendants pursuant to the Court's inherent power to punish contempt, as delimited by 18 U.S.C. § 401(3). That statute grants to a district court the "power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as ... (3) Disobedience or resistance to its lawful writ, process, order,

---

**9.** Plaintiffs' assertion that a stay pending appeal of injunctive relief is dependent upon the posting of a supersedeas bond is incorrect. The case it cites in support of that assertion, *J. Perez & Cia, Inc. v. United States,* 578 F.Supp. 1318 (D.P.R.), *aff'd,* 747 F.2d 813 (1st Cir.1984), is distinguishable. Although the court there stated that the supersedeas was available to stay a nonmoney judgment, it appears that the court was considering an action for declaratory relief. That a supersedeas bond is not an absolute prerequisite to a stay in cases involving injunctive relief is clear from the rule that "[i]f a

judgment includes both a money award and the grant or denial of an injunction, a supersedeas stays the money award *but not that part of the judgment that deals with injunctive relief."* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2905, at 325–26 (1973) (emphasis added); *see also NLRB v. Westphal,* 859 F.2d 818, 819 (9th Cir.1988) (*per curiam*). As discussed in the text, Rule 62(c) permits, but does not require, the district court to provide for the posting of a bond as security for an injunction pending appeal.

rule, decree, or command." The December 17 Order "punished" defendants for their "disobedience" and "resistance" to this Court's "lawful decree," which was the July 15, 1982, Consent Decree, as supplemented by various Court orders. Even though the Decree was negotiated by the parties, it is a judicial act. *See United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). The December 17 Order was, therefore, an exercise of this Court's power to enforce and effectuate its decree. *See Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 533 F.Supp. 869, 880 (E.D.Pa.), *aff'd*, 678 F.2d 470 (3d Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). As such, the December 17 Order was much closer to an exercise of the Court's equitable powers, as opposed to a legal declaration of defendants' monetary liability to plaintiffs. *See id.* at 882.

■ This view of the December 17 Order is confirmed by the fact that its dominant purpose was to coerce defendants to comply with the Decree, rather than to compensate plaintiffs for the harm they suffered. It is well established that "[s]anctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir.1986) (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947)). Where the purpose of the contempt sanctions is compensatory, however, those sanctions must be "limited to 'actual losses *sustained as a result of the contumacy.*'" *Id.* (quoting *Shuffler*, 720 F.2d at 1148).

Although the December 17 Order provides that the fines imposed thereunder are to be made available to defendants for programs that will reduce population levels at Jail No. 1, that provision was not designed to˙ compensate plaintiffs for their actual losses; instead, the Court included the provision pursuant to the rule that coercive civil contempt sanctions may "be used to remedy the problem underlying the contempt finding." *Palmigiano*, 710 F.Supp. at 887. Moreover, the Ninth Circuit, in reviewing the December 17 Order, impliedly held that the contempt sanctions were coercive, not compensatory, in nature. *See Stone*, 968 F.2d at 855 (distinguishing this case from one in which "the contempt order was not final because certain *compensatory* contempt sanctions had not yet been determined").

Because the contempt sanctions at issue are coercive, as opposed to compensatory, the December 17 Order is more closely analogous to an injunctive decree than it is to an award of money damages. Just as an injunction commands a party to take a specific action (or, in the case of a prohibitory injunction, to refrain from doing a specified act), so did the December 17 Order aim to coerce defendants to take specific actions: specifically, to reduce the overcrowding in Jail No. 1. That being the case, the Court determines that the rules regarding stays in injunction cases must apply here.[10] So long as the Ninth Circuit's stay of the December 17 Order remained in effect, defendants were under no obligation, enforceable by means of the contempt sanctions, to conform their conduct to the provisions of the Order.

The stay dissolved on September 1, 1992, when the Ninth Circuit issued its mandate. *See United States v. Thorp (In re Thorp)*, 655 F.2d 997, 998–99 (9th Cir.1981) (*per curiam*). On that date, the temporary reprieve granted defendants came to an end, and they became obligated to comply with the December 17 Order, or to pay sanctions as the price of their continued contumacy. The Special Master has assessed contempt sanctions for the period since September 1, 1992, and will continue to do so, pursuant to the December 17 Order, so long as defendants fail to conform the population levels in Jail No. 1 to the requirements of the Decree and this Court's subsequent orders.

---

**10.** The Court does not express any view on the question whether contempt sanctions would accrue in a case where the sanctions are wholly *compensatory* in nature.

## C.

As a final matter, the Court must address plaintiffs' argument that unless contempt fines accrue while a stay is in effect, a defendant has no incentive to comply with the underlying contempt order during the pendency of the appellate process. Plaintiffs accurately state the logical corollary of the Court's finding that a stay pending appeal deprives a coercive contempt order of its intended effect.

That consequence must be assumed, however, to play a part in the balancing process in which a court engages whenever it is asked to stay an order pending appeal. The list of factors that a court includes in its decisional calculus are

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987); *see also Artukovic v. Rison,* 784 F.2d 1354, 1355 (9th Cir.1986).

The latter two factors account adequately for plaintiffs' concerns. The court, whether the district court (in the first instance) or the court of appeals, necessarily must consider the probability that if a stay is granted, the conduct found to be contemptuous will continue unabated until the stay is dissolved. *See Morgan v. Kerrigan,* 509 F.2d 618, 620–21 (1st Cir.1975) (declining to stay imposition of civil contempt sanctions in school desegregation case where contemnors' chances for success on appeal were low and "the delay and disruption in the planning process and the continued deprivation of otherwise available federal education funds seem[ed] a disproportionate price to pay").

▇ The seemingly drastic result of this Court's ruling is tempered by the fact that a stay pending appeal does not give parties, such as defendants, a license to violate with impunity orders, such as the Decree, that underlie contempt findings. Although an appeal typically deprives a district court of jurisdiction over a case,

> in the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken.

*Hoffman ex rel. NLRB v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir.1976); *see also McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 735 (9th Cir.) ("[A]n appeal of a contempt order issued to force compliance with an injunction should not divest the [district] court of jurisdiction to modify that order to achieve the same enforcement purpose."), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). It follows that in the event a coercive civil contempt order is stayed in a case (such as this one) that requires the district court to supervise a continuing course of conduct, an aggrieved party may seek injunctive relief to force compliance with an underlying order (such as the Decree), the validity of which is unchallenged.

## III.

The Court, having considered the papers submitted by the parties and having had the benefit of oral argument, and for the reasons set forth above, holds that the Ninth Circuit's stay blocked the accrual of contempt fines pursuant to the December 17 Order. Accordingly,

IT IS HEREBY ORDERED that:

1. The stay pending appeal entered by the Ninth Circuit stopped the accrual of fines against defendants for violations of this Court's Order of December 17, 1991.

2. The contempt fines began to accrue against defendants on September 1, 1992, the date the Ninth Circuit's stay dissolved.

3. The Special Master shall remit to defendants all fines paid over to the Special Master, together with the interest collected thereon, for violations of this Court's December 17, 1991, Order that occurred during the time period of January 1, 1992, through August 31, 1992.